[Civ. No. 20148. Second Dist., Div. Three. Dec. 1, 1954.]

ANNA M. RAICH et al., Respondents, v. ALDON CONSTRUCTION CO., INC. (a Corporation), Appellant.

Parker, Stanbury, Reese & McGee and J. H. Peckham for Appellant.

Sheppard, Mullin, Richter & Balthis, Moore, Trinkaus & Binns, Henry T. Moore and Thomas J. Koerber for Respondents.

VALLÉE, J.—Appeal by defendant Aldon Construction Co., Inc., from an adverse judgment in an action for alleged wrongful death. The action arose from the death of Leo Raich, caused by a fire which resulted when a trench digger operated by him in the construction of a sewer struck a submerged casing-head gasoline pipe in a public street. Plaintiffs Anna Raich, Leo's widow, and Ann Raich, his minor daughter, brought the action against defendants Aldon Construction Co., Inc., Pioneer Plaza, Inc., Engineering Service Corporation, and Crescent Development Company. The cause was tried by the court sitting without a jury.

Aldon Construction Co., Inc., referred to as Aldon and Pioneer Plaza, Inc., referred to as Pioneer Plaza, were engaged in subdividing two tracts of land in Norwalk and in work incident to the construction of a sewer system therein. They had possession and control of the tracts. The tracts were intersected by Pioneer Boulevard. Legal title to the tracts was held by Pioneer Plaza. Aldon was the general contractor of Pioneer Plaza. On August 18, 1949, Aldon contracted in writing with the County of Los Angeles to construct the sewers in streets in the tracts according to plans and profiles in the office of the county engineer, "and to do all work incidental thereto." The contract provided that Aldon would at all times give "good and adequate warning of each and every dangerous condition caused by said work" and "shall have such control of the ground reserved for the installation of such improvements, and the streets in which they are to be placed, as is necessary to allow him to carry out this agreement." Aldon had possession and control of Pioneer Boulevard in the area where the sewer was being and was to be constructed and installed across the boulevard and at the point where the accident occurred.

M. Miller Company, referred to as Miller, was employed by Aldon to do the actual work of constructing and installing the sewers. Leo Raich was an employee of Miller, and was engaged in such work at the time he was injured.

The plans and profiles for the sewer system were prepared by defendants Engineering Service Corporation, referred to as Engineering, and Crescent Development Company, referred to as Crescent, for and at the request of Aldon and Pioneer Plaza. They were prepared for distribution to and use by the men engaged in the construction and installation of the sewer, which was known to all defendants. The plans provided for a sewer line to be constructed across Pioneer Boulevard, and for that purpose required the excavation of a ditch about 11 feet deep across the boulevard. At all times all defendants involved knew that the sewer was to be constructed across Pioneer Boulevard at some point between the two tracts and that the plans and profiles disclosed the point of crossing. For several days prior to the accident they all knew that construction of the sewer had commenced and that the plans and profiles had been delivered by Aldon and Pioneer Plaza to the men constructing the sewer, to be followed and used by them. There was a hidden, highly dangerous, casing-head gasoline line buried underground on the west side of Pioneer Boulevard, running from a point north of the north boundary to a point south of the south boundary of the subdivision. The gasoline line was not shown on any of the plans or profiles, nor was it marked by stakes or indicated in any way.

Prior to the accident, the employees of Miller excavating the sewer trench across Pioneer Boulevard, other than Leo Raich, but including the superintendent and the foreman thereof, were informed by Engineering and Crescent that there was a buried gasoline pipe line along the west side of Pioneer Boulevard in the course of and extending across the line of the planned sewer trench; and Miller had notice and knowledge of the danger of the pipe breaking or of the line being punctured if the trench digger was continued in use to excavate the trench as planned, but nevertheless Miller persisted in continuing the excavation across the west side of the highway.

None of the defendants gave Leo any notice or warning as to the existence, location, or danger of the line, and he had no notice or knowledge thereof until after the accident.

On September 25, 1949, Leo was operating a trench digger

machine in excavating the sewer ditch across Pioneer Boulevard, the digger struck and punctured the line, and an explosion and fire resulted from which Leo received injuries which resulted in and caused his death. The foregoing facts were found by the trial court.

The court further found: The presence, location, and danger of the gasoline line was known, or in the exercise of ordinary care would have been known, to each defendant long prior to the accident. Each defendant knew, or in the exercise of ordinary care would have known, long prior to the accident that the work of constructing and installing the sewer line across Pioneer Boulevard was extremely and inherently dangerous if done without warning to all the employees engaged in such work of the existence, location, and danger of the pipe line. Aldon negligently failed to furnish the trench-digging crew, including Leo, with a safe place to work; and such negligence was a proximate cause of the accident. Aldon negligently failed to warn Leo of the line; and such negligence was a proximate cause of the accident. Aldon negligently failed to supply the trench-digging crew, including Leo, with true sewer plans and maps revealing the existence and location of the line; and such negligence was a proximate cause of the accident. The negligence of Aldon constituted separate and independent negligence and was in addition to the negligence of Miller. Notice of the presence in Pioneer Boulevard of the gasoline line was given to Miller, but not to Leo, prior to the accident. The negligence of Miller was a proximate cause of the accident. Whatever negligence Engineering and Crescent were guilty of was eliminated as a proximate cause of the death of Leo by the notice given to and the knowledge of Miller, not Leo, just prior to the accident that there was a buried gasoline line along the west side of Pioneer Boulevard; and such notice and knowledge on the part of Miller operated to constitute an efficient intervening cause as to Engineering and Crescent. Leo exercised ordinary care and was not contributively negligent. He did not assume the risk of the accident, and the accident was not unavoidable.

The court concluded: Leo was an invitee of Aldon as general contractor, and it owed him the duty to furnish him with a safe place to work and to supply him with true maps and plans or warn him of the existence, location, and danger of the gasoline line; and such duties were nondelegable. Such duties and the negligence of Miller constituted an efficient in-

tervening cause of the accident and displaced the original negligence of Pioneer Plaza, Engineering, and Crescent in respect to maps. Judgment followed in favor of plaintiffs against Aldon for $51,421.81, and in favor of the other defendants against plaintiffs. Aldon appeals.

The assignments of error are: 1. The evidence is insufficient to support the findings. 2. The evidence is insufficient to support the implied finding that Aldon, as general contractor, was responsible for the work being done by Miller in Pioneer Boulevard. 3. There is no evidence to support the finding that Aldon had possession or control of Pioneer Boulevard at the point where the accident occurred. 4. There is no evidence to support the finding that Miller was employed by Aldon to construct the sewer. 5. There is no evidence to support the findings that the presence, location, or danger of the gasoline line was known, or in the exercise of ordinary care would have been known, to Aldon; or that Aldon knew, or in the exercise of ordinary care would have known, that construction of the sewer line was extremely or inherently dangerous if done without warning to the employees doing the work. 6. There is no evidence to support the finding that Aldon negligently failed to furnish the trench-digging crew with a safe place to work. 7. The evidence is insufficient to support the finding that any act of Aldon was a proximate cause of injury to Leo. 8. The evidence shows without conflict that Leo was contributively negligent. 9. The evidence shows without conflict that Leo assumed the risks of the dangers. We have concluded that none of the assignments of error can be sustained.

Pioneer Boulevard is a dedicated public highway owned and maintained by the county of Los Angeles. The plans and profiles used in the sewer work were prepared by Engineering. The plans were approved by the county. They provided for crossing Pioneer Boulevard but did not show the gasoline line in question which was owned by Union Oil Company. They did show another gasoline line in the boulevard owned by Shell Oil Company. The Union line was shown on a map in the office of that company in the custody of one Hart, supervisor of properties of Union. It was also shown on maps which had been on file in the office of the county engineer of the County of Los Angeles since 1934, which were available to subdividers and engineers. Prior to the accident, representatives of Aldon, Engineering, and Crescent saw the Union gasoline line depicted on the map in the custody of Hart.

Shortly thereafter and prior to the accident, Miller was advised of the presence of the Union line.

Aldon was the general contractor in charge of the subdivision. The plans and profiles were delivered to it about a month before the accident. On August 18, 1949, Aldon entered into written contracts with the county of Los Angeles for the construction of the sewer system in which it agreed to do the work according to plans and profiles in the office of the county engineer. The contracts provided that Aldon assumed all liabilities for injuries to person and property by reason of the nature of the work, and Aldon agreed that it would give good and adequate warning of each and every dangerous condition caused by the work. It was also agreed that "The contractor shall have such control of the ground reserved for the installation of such improvements, and the streets in which they are to be placed, as is necessary to allow him to carry out this agreement."

Prior to the execution of the contracts with the county, Aldon had entered into a contract with Miller to do the actual work of constructing and installing the sewer system. The plans and profiles prepared by Engineering for Aldon were delivered by the latter to Miller before work commenced. It was contemplated that the trenches would be excavated by a trench digger except at the points of the substructure shown on the plans where the trench was to be hand-dug. Aldon did not inspect the maps in the office of the county engineer or make any effort to locate substructures from those records until after the accident.

More than a month before the accident Metz, representing Aldon, and Butler, representing Engineering and Crescent, met with Hart of Union in his office with respect to the relocation of pipe lines of Union buried in Pioneer Boulevard. Hart testified Metz and Butler were aware of the existence of a waste water pipe line in Pioneer Boulevard prior to the meeting; he showed them a pipe-line map which reflected the pipe lines owned by Union; the casing-head gasoline line was referred to as the "white line." The map shown Metz and Butler showed the "white line" marked "6 Gaso. Trunk Line." Metz and Butler examined the map and discussed the pipe lines. The map indicated that the gasoline line was buried 12 feet to the east of the west boundary of the right-of-way of Pioneer Boulevard. Hart also testified: "The Court: In this conversation with Butler and Metz in your office with the original of this map there before you,

was the subject of the casinghead gasoline pipeline ever mentioned? THE WITNESS: I am sure that all pipelines involved, including the gasoline line, were mentioned. THE COURT: By name? By description? THE WITNESS: Yes, sir; and also by indication on a map. THE COURT: Well, the map indicated only the pipeline for the casinghead gasoline. On that map there is no Shell Oil map or Shell Oil line on it and there is no waste water line marked on it. Now, I am trying to find out if you ever discussed at that meeting the relocation of any part of the casinghead or the white line, as you call it, the Union Oil Company line. THE WITNESS: I am quite certain that was discussed at the first meeting as one of the things that had to be taken care of.''

The foregoing evidence warrants the following conclusions: Miller was employed by Aldon to construct the sewers; Aldon had possession and control of Pioneer Boulevard at the point where the accident occurred; the presence, location, and danger of the gasoline line were known to Aldon; Aldon knew that using a trench digger to dig the trench across Pioneer Boulevard was extremely and inherently dangerous to employees of Miller engaged in the work if done without warning to each of them of the existence of the gasoline line; Aldon negligently failed to furnish the trench-digging crew, including Leo, with a safe place to work, failed to warn Leo of the line, and failed to furnish him with true maps revealing the existence of the line; the negligence of Aldon was a proximate cause of Leo's injuries.

The fact that Miller was negligent and that its negligence was a proximate cause of Leo's injuries does not relieve Aldon. It was the duty of Aldon, as general contractor, to provide Leo, as an employee of Miller, the subcontractor, with a safe place to work and to warn him of danger. In *Revels* v. *Southern Cal. Edison Co.*, 113 Cal.App.2d 673 [248 P.2d 986], we said (p. 677): ''An employee of a subcontractor doing work contracted to be done by the latter is an invitee of the general contractor, and the duty owed by the general contractor to such employee is the duty owed by one to invited persons. (*Fountain* v. *Willard-Slater Co.*, 172 Cal. 129, 131 [155 P. 630]; *Lucas* v. *Walker*, 22 Cal.App. 296, 299-300 [134 P. 374, 379].) The duty is to exercise ordinary care to keep the premises in a reasonably safe condition, or to warn of danger. The duty is not limited to conditions actually known to be dangerous, but extends also to conditions which might have been found dangerous by the

exercise of reasonable care. (*Raber* v. *Tumin,* 36 Cal.2d 654, 658 [226 P.2d 574].) If there are hidden dangers on the premises of which the invitor has knowledge, or which are discoverable by him in the exercise of ordinary care, he must use ordinary care to give warning thereof. (*Dobbie* v. *Pacific Gas & Electric Co.,* 95 Cal.App. 781, 788-790 [273 P. 630].)

"The general rule is that a general contractor on a construction job who is in control of the premises is burdened with the duty to use ordinary care to provide a safe place for employees of a subcontractor to work, including the duty to warn such employees of a danger, either known to the general contractor, or discoverable by the exercise of ordinary care, or otherwise to protect the employees from injury, and to avoid exposing them to injury on account of dangerous conditions. He is bound to take reasonable measures to protect the employees of a subcontractor from injuries likely to arise from places of danger about the building. If he neglects this duty by failing to give adequate notice or warning of the existence of a place of danger, he may be found liable to an employee of a subcontractor for resulting injury. (*Dingman* v. *A. F. Mattock Co.,* 15 Cal.2d 622, 624 [104 P.2d 26]; *Brockman* v. *Aldous,* 11 Cal.App.2d 650 [54 P.2d 43]; *Caspersen* v. *La Sala Bros.,* 253 N.Y. 491 [171 N.E. 754]; Anno. 20 A.L.R.2d 868, and cases there cited.)

"As a part of supervising the work, it is the duty of the general contractor to oversee conditions in the work of each subcontractor so far as they affect the safety of the employees of the subcontractor." One on whom the law devolves a duty cannot shift it to another so as to exonerate himself from the consequences of its nonperformance. (*Moran* v. *Zenith Oil Co.,* 92 Cal.App.2d 236, 241 [206 P.2d 679]; 38 Am.Jur., 655, § 13.)

The Miller trench-digging crew relied on the plans and profiles furnished to Miller by Aldon. Prior to the date of the accident, Miller had hand-dug around the Shell line disclosed on the plans and around a waste water line immediately below the Shell line. Except around the Shell and waste water lines all of the trenching for the sewer system was done by using a trench-digging machine. On September 25, 1949, Leo, on instructions from his superiors, commenced the digging of the remainder of the trench across Pioneer Boulevard, using the trench-digging machine in low gear. He had no notice or knowledge of the existence of the Union gasoline line. The trench digger struck the Union line, punctured

it, and gasoline was expelled under high pressure. The foreman yelled, "Get out, because we hit the water line." In less than a minute an explosion occurred sending flames 75 to 100 feet from the point of the puncture and 100 feet into the air. The wind was blowing hard and blew the gasoline away from the other men and toward Leo. He was severely burned and died a few days later. There was evidence that one operating a trench-digging machine would not expect to contact unmapped lines in the area where the sewer trench was to cross Pioneer Boulevard.

 It has been said many times that the question of contributory negligence is generally one for the determination of the trier of fact. This case is no exception to the rule. We think it manifest that it cannot be said that Leo was contributively negligent.

 The contention that Leo assumed the risks of the dangers which resulted in the accident cannot be sustained. The defense of assumption of risk is available when there has been a voluntary acceptance of a risk and such acceptance, express or implied, has been made with knowledge and appreciation of the risk. (*Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158, 161 [265 P.2d 904].) Since Leo had no knowledge of the existence of the gasoline line he cannot be said to have assumed the risk of the danger.

 Aldon's chief complaint appears to be that the court found the negligence of Engineering and Crescent was eliminated as a proximate cause of the death of Leo by the notice they gave to Miller, while there was no such finding made with respect to Aldon. Aldon has no ground for complaint on this score. Plaintiffs are the only ones who can complain of the elimination of Engineering and Crescent, and they have not appealed. The supported findings that Aldon was negligent and that its negligence was a proximate cause of the accident sustain the judgment irrespective of the findings as to the other defendants.

Affirmed.

Wood (Parker), J., concurred.

Shinn, P. J., did not participate.

A petition for a rehearing was denied December 21, 1954, and appellant's petition for a hearing by the Supreme Court was denied January 28, 1955. Edmonds, J., Schauer, J., and Spence, J., were of the opinion that the petition should be granted.