[Civ. No. 21552. First Dist., Div. Two. May 18, 1965.]

CLIFFORD R. SCOTT, Plaintiff and Appellant, v. JOHN E. BRANAGH AND SON, Defendant and Respondent; INDUSTRIAL INDEMNITY COMPANY, Intervener and Appellant.

---

*Assigned by the Chairman of the Judicial Council.

J. Adrian Palmquist, Alfred A. Affinito and Francis T. Cornish for Plaintiff and Appellant.

Wagener, Jewett, Lynch, Sutton & Curran, Wagener, Lynch & Curran and Donald W. Curran for Intervener and Appellant.

Weinmann, Rode, Burnhill & Moffitt and Cyril Viadro for Defendant and Respondent.

SHOEMAKER, P. J.—This is an action by plaintiff Clifford Scott for personal injuries suffered by him in the construction of a building on the Berkeley Campus of the University of California by defendant general contractor John E. Branagh and Son. The contract for the iron work was sublet to plaintiff's employer, Camblin Steel Service Co., Inc. While engaged in his employment, plaintiff fell from the roof of the building, allegedly as the result of the negligence of the defendant in the construction of the building.

The action was defended on the grounds (1) that defendant was not negligent, (2) that plaintiff was contributorily negligent, and (3) that plaintiff assumed the risk.

Industrial Indemnity Co., the compensation carrier of plaintiff's employer, filed a complaint in intervention to recover the sums it had paid plaintiff. Defendant contractor's answer raised the affirmative defense of negligence on the part of plaintiff's employer.

After all the evidence was in, defendant moved for a directed verdict, which was granted, and judgment thereafter was entered in its favor and against both plaintiffs. Plaintiffs have appealed therefrom.

The granting of a directed verdict may be sustained only when it can be said as a matter of law that no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it or the trial court to set it aside as a matter of law. (*Herrera v. Southern Pac. Co.* (1957) 155 Cal.App.2d 781, 783 [318 P.2d 784]; *Estate of Lances* (1932) 216 Cal. 397, 400 [14 P.2d 768].)

We therefore recite the evidence, which is substantially without conflict. The accident occurred September 12, 1958.

The building involved consisted of three floors and a roof. The concrete roof slab had been poured some time prior to the accident, and on September 12 the wooden forms, which had served as protective barricades around the perimeter of the roof, had been removed. Transportation to the roof was by a hoist which could be used to raise or lower concrete, and a Chicago boom, which could be used to raise or lower small amounts of reinforcing steel. The east edge of the roof, immediately adjacent to the hoist and boom, was equipped with a handrail some 20 feet in length. In order to operate the boom, it was necessary to have at least one man on the ground and one man on the roof.

Shortly before noon on the day of the accident, plaintiff Scott's foreman instructed him to go up on the roof and throw down some iron which had been left on the roof and was needed below.

Scott was a steelworker of several years' experience who had frequently had occasion to work in high places. At the trial he was unable to recall any of the details pertaining to the accident and remembered only that he had been instructed to go to the roof and that he had thrown a few short pieces of steel off the roof prior to falling. He stated that it was accepted procedure to "throw" or "toss" steel from the roof, and that he had seen other steelworkers do it.

Due to the nature of Scott's testimony and the absence of any eyewitnesses at the scene, the only evidence as to the precise manner in which the accident occurred consisted of Scott's deposition, which had been taken October 14, 1960. He therein stated that he had found the steel lying in a pile on the roof and had carried pieces of it a distance of some 20 or 25 feet to a point 2 feet from the south edge of the roof. He knew that there was a 50-foot drop from the roof, that there was no guardrail on the south edge of the roof, and that it was "just a straight shot to the edge." He was also aware of the guardrails near the hoist, and admitted that it was possible to throw steel over guardrails and that he himself had done so a few days before the accident. He elected to throw the steel from the south edge of the roof because it was located closest to the spot where the steel was piled and he did not want to walk all the way across the roof. He had thrown steel from a roof on many prior occasions. His foreman had not instructed him to throw the steel from any particular point on the roof.

Immediately prior to his fall, Scott had made one or more

trips from the spot where the steel was piled to the south edge of the roof. He carried the steel on his shoulder, proceeded to a point which was near enough to the edge to enable him to look down, and threw the steel off the roof. He did not push the steel from the roof as he was afraid of hitting someone. His fall occurred as he approached the edge of the roof with a piece of steel some 20 or 30 feet in length with right angle hooks at the ends. He did not recall slipping or sliding and stated that he had no trouble standing. There were no distractions such as anyone calling to him from below. As he stood near the edge of the roof and prepared to throw the steel, it got caught in his pants leg and he fell or was pulled from the roof.

Scott's foreman, one Beaty, testified that Scott had worked on the roof for several days prior to the accident. Beaty and his crew had used the boom prior to the accident to raise steel of the size carried by Scott to the roof. He stated that it was accepted procedure to push rather than throw pieces of steel from the roof. If the steel is carried on a worker's shoulder and thrown from that position, there is a danger that the hook on the steel will catch the worker's clothing. He did not tell Scott not to use the boom to lower the steel. However, he expected Scott to push the steel from the edge of the roof, a procedure which was proper. When he had last seen the left-over steel on the roof, it was piled closest to the east edge of the roof. He also stated, however, that there were trucks, saws and other power tools set up on the roadway below the east edge of the roof.

There was considerable conflicting expert testimony as to whether or not defendant was required, by custom and usage or by certain construction safety orders of the Division of Industrial Safety, to have provided a guardrail around the perimeter of the roof.

The court, in granting the motion for a directed verdict, stated that although it did not consider that the safety orders in question required defendant to surround the roof with a railing, the evidence was sufficient to support a finding that custom, practice and due care required the installation of such a railing. The court nevertheless concluded that the unguarded roof was as a matter of law an obvious danger which plaintiff Scott should have observed in the exercise of reasonable care and that he was accordingly precluded from recovery. With this conclusion we do not agree, for the following reasons.

■ It is the settled law of this state that an employee of a subcontractor is an invitee of the general contractor. (*Florez* v. *Groom Development Co.* (1959) 53 Cal.2d 347, 354 [1 Cal. Rptr. 840, 348 P.2d 200]; see cases collected 35 Cal.Jur.2d, § 147, p. 663.) ■ The general contractor is therefore under a duty to use ordinary care to provide a safe place for employees of a subcontractor to work, to warn such employees of a danger which is known to the general contractor or discoverable in the exercise of ordinary care, or otherwise to protect such employees from injury and to avoid exposing them to injury on account of dangerous conditions. (*Revels* v. *Southern Cal. Edison Co.* (1952) 113 Cal.App.2d 673, 678 [248 P.2d 986]; *Raich* v. *Aldon Constr. Co.* (1954) 129 Cal. App.2d 278, 285 [276 P.2d 822].) ■ The general contractor is not an insurer of safety, however, and he is not liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care. (*Florez* v. *Groom Development Co., supra,* at p. 355; *Pauly* v. *King* (1955) 44 Cal.2d 649, 653 [284 P.2d 487]; *Knight* v. *Contracting Engineers Co.* (1961) 194 Cal.App.2d 435, 445 [15 Cal.Rptr. 194]; *Brown* v. *San Francisco Ball Club, Inc.* (1950) 99 Cal.App.2d 484, 486 [222 P.2d 19].) ■ Even though the liability of the general contractor is predicated upon violation of a safety order, contributory negligence on the part of the employee of a subcontractor is nevertheless a defense. (*Mula* v. *Meyer* (1955) 132 Cal. App.2d 279 [282 P.2d 107].)

■ In the instant case, respondent does not seriously contend that the evidence was insufficient as a matter of law to support a finding that it was negligent in failing to provide guardrails around the perimeter of the roof from which appellant Scott fell. There was expert testimony that it was the custom and practice in the construction industry for a general contractor to maintain handrails on the perimeter of a concrete slab roof, before *and after* the roof was poured, so long as it could be reasonably anticipated that men would be working on the roof. There was ample evidence that respondent was aware, on September 12, 1958, that considerable work requiring the presence of workers on the roof remained to be done. Since respondent's failure to observe custom and usage was clearly evidence of its negligence (*Maia* v. *Security Lumber & Concrete Co.* (1958) 160 Cal.App.2d 16, 21 [324 P.2d 657]; *Pauly* v. *King, supra,* at p. 655), it is unnecessary to determine whether respondent's negligence could also have

been predicated upon its failure to comply with certain safety orders of the Division of Industrial Safety.

The question remaining is whether the judgment may be upheld on the ground that the evidence established as a matter of law that the danger of the unguarded roof was an obvious one which appellant Scott ought to have observed in the exercise of reasonable care.

Respondent, who contends that the danger was of this nature, relies upon *Knight* v. *Contracting Engineers Co.,* *supra*. In that case, the plaintiff, an employee of a roofing subcontractor, was injured when he stepped upon a notched plank which gave way beneath him. The plank in question was one of several which had been furnished by defendant general contractor for use in forming a gutter line and not as scaffolding. Although plaintiff was admittedly aware that the planks were notched and that they were not designed or intended for scaffolding, he helped his foreman lay them out for that purpose and chose to walk upon them rather than upon the iron portion of the roof. The court, in upholding a judgment notwithstanding the verdict in favor of defendant general contractor, pointed out that the notched planks became dangerous only when plaintiff and his foreman chose to utilize them as scaffolding, that the danger of using the planks in this manner was an obvious one of which plaintiff was aware, and that plaintiff had a safe alternative method of reaching the job area by walking upon the iron.

Appellants, on the other hand, rely upon *Florez* v. *Groom Development Co., supra*. In that case, the plaintiff, an employee of a painting subcontractor, was injured when a plank which had been placed across a ditch by the employees of defendant general contractor gave way beneath him. Plaintiff had run out of paste immediately prior to the accident and was in need of water to mix another batch. The only available water faucet in the vicinity was located on the other side of the ditch across which the plank had been placed. The judgment for plaintiff was affirmed on the theory that the defendant had created a dangerous condition which constituted an implied invitation to workmen in need of water and had failed to warn those workmen of the condition. Although defendant contended that its only negligence was in using a plank which was too short and too narrow, and that these defects were clear and obvious ones, the court pointed out that the quantum of care required of an invitor and invitee was not identical and that a workman-invitee who must work

in a position of possible danger is bound to exercise less care for his own safety than would otherwise be the case. Since the plaintiff's duties required him to obtain water and the faucet in question was the only place where he knew he could obtain it, the jury was entitled to balance the necessity against the danger, evon if it could be deemed an obvious one.

Although both the *Knight* and *Florez* decisions are factually dissimilar in certain respects from the instant case, we are persuaded that the reasoning of the *Florez* decision should be followed. In the instant case, appellant Scott did not, as in *Knight*, create the dangerous condition which resulted in his injuries. Although the unprotected state of the roof was admittedly known to him, his foreman had instructed him to go onto the roof and "throw" down some steel which was needed below. Although the roof contained a boom which could have been used to lower the steel, appellant Scott testified that he was unfamiliar with the method of operating the boom and his foreman admitted that he did not expect Scott to use the boom, which would have required the services of at least one additional employee. The east edge of the roof, which was protected by a 20-foot railing, would similarly appear not to have furnished appellant Scott with a safe alternative, since there was evidence that equipment had been set up below. It is thus inferable from the evidence that Scott was faced with the practical necessity of throwing the steel from an unguarded portion of the roof edge, and that the jury ought to have been allowed to balance the necessity with the danger. Although there was also testimony, by Scott's foreman, that it was not proper to throw, rather than push, steel from the roof, it cannot be said that Scott's apparent deviation from this procedure constituted negligence as a matter of law. Scott's testimony indicated that he threw the steel from the roof in the manner which he had seen other steelworkers use and which he considered to be proper. He also stated that if he had pushed the steel from the roof, he would have been unable to look down and avoid hitting workers below.

In view of the foregoing, we cannot hold that appellant Scott was as a matter of law precluded from recovery by virtue of the obvious danger inherent in the unguarded roof.

■ The judgment against appellant Industrial Indemnity Co. stands upon an entirely different footing, since, as against this appellant, respondent was entitled to rely upon the additional defense of negligence on the part of Scott's employer,

Camblin Steel Service Co., Inc. In our recent case of *Conner v. Utah Constr. & Mining Co.* (1964) 231 Cal.App.2d 263 [41 Cal.Rptr. 728] (hearing denied February 10, 1965), plaintiff, the employee of a steel erection subcontractor, brought suit against the general contractor to recover for injuries sustained when he fell from the unguarded second floor of a building under construction. The compensation carrier for plaintiff's employer intervened against the defendant to recover benefits paid to plaintiff. After the jury had returned a verdict against the defendant in favor of both the plaintiff and the compensation carrier, the trial court entered judgment for the plaintiff but granted the defendant's motion for judgment notwithstanding the verdict against the compensation carrier. On appeal by the respective parties, both judgments were affirmed by this court, which pointed out that although there was ample evidence that defendant general contractor was negligent in failing to provide railings or other installations to protect the employees of subcontractors on the second floor deck, the evidence also established that plaintiff's employer was concurrently negligent in sending plaintiff into a working area which it knew to be unsafe. Under such circumstances, the compensation carrier was as a matter of law precluded from recovering from defendant general contractor the benefits which it had paid to plaintiff.

In the instant case, the uncontradicted evidence reveals that Scott's employer, Camblin Steel Service Co., Inc., had actual knowledge, through its agent, Beaty, of the unguarded roof. Beaty nevertheless directed Scott to go to the roof and throw down the steel. Since this factual situation would appear indistinguishable from that presented in the *Conner* case, it follows that Camblin Steel Service Co., Inc., as Scott's immediate employer, "had the primary duty to provide a safe place to work or to stop him from working in an unsafe area or in an improper manner, and that . . . [its] negligence was a concurrent proximate cause of the accident." (*Conner v. Utah Constr. & Mining Co., supra,* at p. 277.)

The judgment against Scott and in favor of John E. Branagh and Son is reversed, and the judgment against Industrial Indemnity Co. and in favor of John E. Branagh and Son is affirmed.

Agee, J., and Taylor, J., concurred.

The petitions of all parties for a hearing by the Supreme Court were denied July 14, 1965.