[Civ. No. 23051. First Dist., Div. One. Oct. 18, 1966.]

MANUEL SOUZA, Cross-complainant and Respondent, v. JOHN PRATICO et al., Cross-defendants and Appellants.

John R. Lamoreaux for Cross-defendants and Appellants.

Wines & Bonney and B. K. Wines for Cross-complainant and Respondent.

SULLIVAN, P. J.—Plaintiff Anthony Polisso, an employee of defendant and appellant John Pratico, a masonry subcontractor, was injured on April 17, 1963 at a construction site in San Jose. He commenced this action for damages for personal injuries against defendant and cross-complainant Manuel Souza, the general contractor of the job, and against other defendants later dismissed. The gist of the complaint was that Souza so negligently and carelessly owned, operated, maintained, supervised, inspected and controlled the construction operations as to cause plaintiff's injuries. Polisso did not join his employer as a cross-defendant.

Souza filed an answer denying all material allegations of the complaint and in addition a cross-complaint against Pratico and cross-defendant and appellant California Compensation and Fire Company (California Compensation), Pratico's workmen's compensation insurance carrier. The gist of the cross-complaint was that Polisso's injuries were proximately caused by the negligence and carelessness of his employer Pratico and that any judgment recovered by Polisso against Souza should be reduced by the amounts of workmen's compensation benefits paid to or on behalf of plaintiff by California Compensation. The above cross-defendants filed a joint answer to the cross-complaint denying the allegations pertaining to said alleged negligence and reduction of judgment.

The cause was tried by a jury which returned a verdict in favor of Polisso and against Souza in the sum of $32,500 and

also returned its special verdict that plaintiff's injury was not proximately contributed to by plaintiff's employer Pratico.

Souza moved for a new trial. His motion for a new trial on plaintiff's complaint was denied but his motion for a new trial on his cross-complaint against Pratico and California Compensation was granted on the grounds of insufficiency of the evidence and on the further ground that the verdict was against the law. The court's order of denial also stated: "The Court further finds as a matter of law that there was concurring contributory negligence on the part of cross-defendants, proximately causing the injuries sustained by plaintiff." The court further ordered that the application of California Compensation for a lien be denied and that the judgment in favor of plaintiff be reduced by the amount of the lien of said insurance carrier, namely $9,186.29. (See *Witt* v. *Jackson* (1961) 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641].)

Cross-defendants Pratico and California Compensation appeal from the above order "denying Defendant MANUEL SOUZA's Motion for New Trial on the Complaint, and granting said Motion as to the Cross-Complaint; and denying to Cross-Defendant CALIFORNIA COMPENSATION & FIRE COMPANY its lien on the judgment, and reducing the judgment in the amount of said lien; and from the judgment against Cross-Defendants as amended by said Order."[1]

The facts in the main are not in dispute. In April 1963 Souza was the general contractor for a one-story commercial building under construction in San Jose. Pratico was the masonry subcontractor who had the contract for the brickwork on the job and with his brothers Pete and Paul did the actual work themselves. Plaintiff Anthony Polisso was a hod carrier employed by Pratico on the job. His duties were to keep the three brothers supplied with materials—mixing the mortar and hauling brick, mortar and anything else used to the masons inside the building.

On April 17, 1963, plaintiff arrived at the job at about 7:45 a.m. A cement mixer, used to mix the mortar, was brought to site shortly thereafter. Plaintiff, who had operated this particular mixer over a period of about seven months, set up the machine himself in a position where it would facilitate his supplying the bricklayers inside the building.

---

[1] Defendant Souza also appealed from the judgment against him and in favor of plaintiff. Shortly after the filing of cross-defendants' opening brief, Souza filed with us an abandonment of his appeal and the same was thereupon dismissed.

At about 11:15 a.m. plaintiff, while operating the mixer, severely injured his left hand and arm in an unusual accident which as reconstructed from his testimony happened as follows: Plaintiff had mixed one or two batches of cement and was in the process of mixing the next batch when he noticed that a piece of the cement paper bag had fallen into the mortar. He therefore pushed back the clutch of the mixer to stop the blades so that he could reach in and remove the piece of paper. He then reached down into the mixer with his left hand but being short had to stand on tiptoe and thereafter lifted his right foot off the ground. He retrieved the piece of the bag but as he resumed his normal position his right foot landed on the end of a "2x4" lying at an angle against and across the axle of the mixer. His foot hit the high end of the piece of wood lying in this see-saw position, causing the lower end resting on the ground to flip up and come in contact with the clutch, thus knocking the clutch back to an "on" position and starting the operation of the blades before he could remove his arm from the mixer. As a result plaintiff suffered severe injuries.

Plaintiff testified that it was his duty to take care of the operation of the mixer. He stated that when he moved the mixer to its location on the job and set it up there he saw no 2x4 on the axle. Nor did he see any board on it during the time he was working around the machine. In short he neither saw the board nor knew it was there until his foot hit it as described above. He did not at any time see anyone else working around the mixer; did not see defendant Souza in the vicinity of it; and did not see anyone carrying lumber near the piece of equipment, although there was a workman on a ladder near the door of the building which was 14 to 15 feet away.

Defendant, called by plaintiff as a witness under Code of Civil Procedure section 2055, testified that in his contracting business he followed the customary practice of subcontracting various parts of the work; that he subcontracted the bricklaying to Pratico Brothers and the rough work to Reno Brothers; that having been a carpenter for many years he helped the latter. In addition his son, then 18 years old and attending school, helped Souza with the clean-up work. Since the carpentry produced a number of unused and discarded pieces of lumber, Souza regarded it as his job to keep the premises clean, apparently because the subcontractors would not take it upon themselves to do so. The clean-up operation was con-

ducted by Souza and his son about once or twice a week. He stated that just before the bricklayers arrived on the job he had the premises cleaned and all the lumber piled on the opposite side of the building about 100 feet from the scene of the accident. These pieces consisted of 2x4's, 2x8's and 2x10's. He further said that on the day of the accident he was not near the mixer and that as far as he knew there were no 2x4's around the machine.

Sam Reno testified that when he was finished with the framing he helped Souza stack some of the good lumber only but Souza was to do all of the clean-up. Paul Pratico testified that he did not use 2x4's in his bricklaying work and that he did not see any piece of lumber around the mixer on the day of the accident. John Pratico testified that he did not see any piece of lumber near the mixer and could not recall whether there was any lumber scattered in the area. Pete Pratico testified that he did not see any lumber.[2] However, John further testified that there was a workman, other than defendant, working on the roof of the building, that the man was using a Skil-saw to cut a hole in the roof and that at one point some pieces of either a 2x4 or 2x6 fell inside the building around where he was working. Plaintiff also witnessed this occurrence. Polisso and the three Pratico brothers were the only men from the masonry crew on the job; the three Praticos were working inside the building. There is no evidence in the record that any of them used the troublesome 2x4 in connection with the mixer or for any other purpose or that they put it in the position mentioned above.

■ The law in California is clear that an employee of a subcontractor is an invitee of the general contractor. (*Florez* v. *Groom Development Co.* (1959) 53 Cal.2d 347, 354 [1 Cal.Rptr. 840, 348 P.2d 200] ; *Pauly* v. *King* (1955) 44 Cal.2d 649, 653 [284 P.2d 487] ; see generally 35 Cal.Jur.2d, pp. 663-665.) ■ As the result of such invitor-invitee relationship, the general contractor exercising supervision over a construction job owes the employees of a subcontractor a common-law duty to exercise ordinary care to provide them with a reasonably safe place to work or to warn them of dangers which are not obvious. (*Dingman* v. *A. F. Mattock Co.* (1940) 15 Cal.2d 622, 624 [104 P.2d 26] ; *Florez* v. *Groom Development Co.,* *supra*, 53 Cal.2d at pp. 354-357; *Revels* v. *Southern Cal. Edison Co.* (1952) 113 Cal.App.2d 673, 678 [248 P.2d 986] ; *Raich*

[2]Both Paul and John Pratico were called by plaintiff; Pete Pratico was called by defendant under Code of Civil Procedure, section 2055.

v. *Aldon Constr. Co.* (1954) 129 Cal.App.2d 278, 284-285 [276 P.2d 822].) However, the general contractor is not an insurer of the safety of such employee-invitee and is not liable to him for an injury resulting from a danger which was obvious or should have been observed in the exercise of ordinary care. (*Florez* v. *Groom Development Co., supra,* 53 Cal.2d at p. 355.)

■ Where, however, the general contractor not merely exercises general supervision over the job in order to bring about its satisfactory completion but also controls the premises or the instrumentality causing the injury he is an employer within the meaning of the Labor Code[3] (§§ 6304, 6305)[4] and under a nondelegable duty to comply with the applicable safety provisions found therein.[5] (*Kuntz* v. *Del E. Webb Constr. Co.* (1961) 57 Cal.2d 100, 105-106 [18 Cal.Rptr. 527, 368 P.2d 127]; *Atherley* v. *MacDonald, Young & Nelson, Inc.* (1956) 142 Cal.App.2d 575, 581 [298 P.2d 700]; *Gonzales* v. *Robert Hiller Constr. Co.* (1960) 179 Cal.App.2d 522, 530-531 [3 Cal.Rptr. 832]; *Conner* v. *Utah Constr. & Mining Co.* (1964) 231 Cal.App.2d 263, 271 [41 Cal.Rptr. 728]; see 15 Hastings L. J. 604.) ■ These statutory duties are greater than his common law duties above-mentioned (*Conner* v. *Utah Const. & Mining Co., supra*) and a violation of any of them gives rise to a rebuttable presumption of negligence. (See *Atherley* v. *MacDonald, Young & Nelson, Inc., supra,* 142 Cal.App.2d at p. 587; see *Kuntz* v. *Del E. Webb Constr. Co., supra*; *Woolen* v. *Aerojet General Corp.* (1962) 57 Cal.2d 407, 412 [20 Cal.Rptr. 12, 369 P.2d 708].) ■ Such statutory

[3]Hereafter, unless otherwise indicated, all section references are to the Labor Code.

[4]Section 6304 provides: " 'Employer' shall have the same meaning as in section 3300 and shall also include every person having direction, management, control, or custody of any employment, place of employment, or any employee."

Section 6305 provides: " 'Employee' means every person who is required or directed by any employer, to engage in any employment, or to go to work or be at any time in any place of employment."

[5]Section 6400 provides: "Every employer shall furnish employment and a place of employment which are safe for the employees therein."

Section 6401 provides: "Every employer shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes, which are reasonably adequate to render such employment and place of employment safe. Every employer shall do every other thing reasonably necessary to protect the life and safety of employees."

Section 6402 provides: "No employer shall require, or permit any employee to go or be in any employment or place of employment which is not safe."

duties are of course imposed at the same time on the subcontractor as the immediate and direct employer of the employee-invitee. (*Conner* v. *Utah Constr. & Mining Co., supra,* 231 Cal.App.2d at p. 276.)

In the instant case, the trial court instructed the jury in substance that it was defendant Souza's duty in the conduct of any active operations on the property to use reasonable care to avoid injury to the plaintiff; that it was also his duty to use reasonable care to keep the premises in a condition reasonably safe for plaintiff; that if there was danger arising from conditions not readily apparent to the senses of which the general contractor had actual notice or which were discoverable by him in the exercise of ordinary care, it was Souza's duty to give reasonable warning of such danger to others working on the premises; but that he was not under a duty to give notice of an obvious danger. It is apparent that these instructions covered Souza's common law duties as outlined in the several cases discussed by us *supra.*

Immediately following these instructions the court read to the jury sections 6400-6402. It then instructed them that such sections of the Labor Code applied to Pratico, the subcontractor, as a matter of law since the evidence conclusively established that Polisso was employed by Pratico but that whether they applied to Souza, the general contractor, was a question of fact to be decided by the jury under the criteria contained in the instruction.[6] It is clear that these instructions covered the statutory duties outlined in the *Kuntz* case and other cases cited above to which Souza might be subject in addition to his normal duties as an invitor.

It is apparent that the jury by returning the verdict it did concluded that Souza had violated one or both groups of duties to which he was subject, that is his common law duties as an invitor and his statutory duties as an employer under the Labor Code. We are unable, of course, to discern from the verdict whether the jury imposed liability on both bases. If we

[6]The pertinent instruction continued: "If you find from the evidence that the defendant Souza only exercised general supervision and control to bring about satisfactory completion of the work and did not control and supervise the operative details of the work in question, you are instructed that the above code sections read to you are inapplicable. On the other hand, if you find from the evidence that the defendant Souza did something more than exercise general supervision and control to bring about satisfactory completion of the work and exercised control and supervision over the operative details of the work in question, you are instructed that for the purposes of the code sections which have been just read to you, the defendant Manuel Souza is regarded by the law as the employer of the plaintiff, Anthony Polisso."

were now called upon to decide whether the verdict in favor of plaintiff and against Souza could be sustained, we would observe at least that the evidence summarized by us was susceptible of the inference that Souza had breached his common law duties. The jury could properly find that none of the Pratico crew used 2x4 lumber or caused such a piece to fall across the axle of the mixer, that defendant had not in fact caused the premises to be properly cleaned before Pratico brothers began their work, that the 2x4 in question was thrown or discarded by the workman seen by plaintiff or John Pratico so as to become lodged against the axle of the mixer unbeknown to plaintiff,[7] and that Souza knew or should have known about the work being done on the premises by one or more workmen and was remiss in supervising it. We need not resolve this issue since Souza has dismissed his appeal from plaintiff's judgment.

However, as previously pointed out, the trial court, nullifying the jury's special finding that plaintiff's injury was not proximately contributed to by the negligence of Pratico, found that cross-defendants Pratico and California Compensation were guilty of ''concurring contributory negligence'' as a matter of law proximately causing plaintiff's injuries and reduced the judgment in plaintiff's favor by $9,186.29, the amount of the workmen's compensation benefits paid out. As defendant points out to us, this had the same effect as the granting of a judgment notwithstanding the verdict in a situation where, instead of being a cross-defendant, California Compensation had filed a complaint in intervention to recover the workmen's compensation benefits paid to Polisso. (See e.g. *Conner* v. *Utah Constr. & Mining Co., supra,* 231 Cal.App.2d 263, 268-269.)

The crucial question which we face, therefore, is whether, as the trial court found, there was concurrent negligence as a matter of law on the part of plaintiff's employer Pratico. To state it another way, is there any evidence supportive of the jury's special finding that plaintiff's injuries were not proximately caused by negligence of his employer so that the jury could properly conclude that while Souza was negligent, Pratico was not? It is Souza's position as respondent on this

---

[7]Polisso did not remain at the machine continuously. His duties required him to mix the mortar, haul it in a wheelbarrow to the masons, haul them brick in the same manner, move their mortar boards and carry their steel inside. He stated that requests for materials were constant—''that goes on all the time. . . .''

appeal that while the record supports a finding by the jury that he violated his duty to provide a safe place to work, the record also shows that Pratico also violated his primary duty under the Labor Code in such respect. In summary Souza claims that when they found him negligent they necessarily had to find Pratico guilty of concurrent negligence proximately contributing to plaintiff's injuries. As support for this thesis Souza relies on *Conner* v. *Utah Constr. & Mining Co., supra,* 231 Cal.App.2d 263, *Scott* v. *John E. Branagh & Son* (1965) 234 Cal.App.2d 435 [44 Cal.Rptr. 384] and *Jones* v. *McFarland Co-Op Gin, Inc.* (1965) 237 Cal.App.2d 94 [46 Cal.Rptr. 572].

At the outset we observe, in paraphrase of the *Conner* opinion, that the mere fact that Souza could have been found to be an ''employer'' with a nondelegable duty within the meaning of the Labor Code (see fn. 4, *ante*) does not prevent Pratico ''from having a simultaneous nondelegable duty to see to the safety of its workmen and to comply with the Labor Code and applicable safety orders [citations].'' (*Conner* v. *Utah Constr. & Mining Co., supra,* 231 Cal.App.2d 263, 276; *Scott* v. *John E. Branagh & Son, supra,* 234 Cal.App.2d 435, 443.) The above three cases, however, do not stand for the proposition that where there is liability on the general contractor it must inexorably follow that liability shall coexist against the subcontractor-employer.

An examination of the three cited cases discloses that in each the direct and immediate employer was concurrently negligent *under the particular facts of the respective case.* In *Conner,* the general contractor which controlled not only the structure itself but the scheduling of the subcontractor's work on it, although knowing that the second floor was without railings or other installations to protect their safety, informed the subcontractor involved to proceed with work in such area. The uncontradicted evidence showed that the subcontractor's superintendent and general foreman, knowing that the area was without railings or safety devices, sent the plaintiff-employee to work there and did nothing to see that the area was railed or to stop the employee after he started working there. Division Two of this court said: ''Under these facts, a jury could only conclude that Statewide, as the immediate employer of Conner, had the primary duty to provide a safe place to work or to stop him from working in an unsafe area or in an improper manner, and that Statewide's negligence was a concurrent proximate cause of the accident.'' (231

Cal.App.2d at p. 277.) There the jury had exonerated the subcontractor and awarded damages to its workmen's compensation carrier (a plaintiff in intervention) for the benefits paid out but the trial court granted a judgment notwithstanding the verdict in favor of the general contractor. This was affirmed on appeal.

In the *Scott* case, *supra,* the plaintiff, an employee of a steel subcontractor, was directed by his foreman to go up on the roof of the building under construction and throw down some iron which was needed below. In the course of his work he fell from the roof. Evidence established that, contrary to industry custom, the general contractor had failed to maintain handrails on the perimeter of the roof. A judgment on a directed verdict was entered in favor of the general contractor and against both the injured plaintiff-employee and the subcontractor's workmen's compensation carrier which filed a complaint in intervention. The uncontradicted evidence showed that the subcontractor, through its foreman, had actual knowledge of the unguarded roof but nevertheless directed Scott to work there. While reversing the judgment against Scott,[8] the appellate court affirmed the judgment against the insurance carrier, observing that the "factual situation would appear indistinguishable from that presented in the *Conner* case." (234 Cal.App.2d at p. 443.)

In the *Jones* case, *supra,* 237 Cal.App.2d 94, the plaintiff was injured while repairing a cotton gin sold by his employer to the defendant. While working in an elevated area available for adjusting the machine but not provided with guardrails or handgrips, Jones slipped, fell and was injured. Liability of the ginning company was based on its violation of its duties under the Labor Code. By a judgment notwithstanding the verdict, Jones' recovery was reduced by the amount of his employer's lien for workmen's compensation benefits paid him. The evidence showed that plaintiff's employer knew that the employee was likely to be working in the unsafe place and could not escape liability even though there was no direction to the employee in so many words to enter the area. The judgment was affirmed.

In all of the above three cases, the employer under the uncontradicted evidence directed the injured employee to work

[8]In reaching this conclusion the court seems to have predicated the general contractor's liability on violation of its common law duties rather than on duties of a statutory employer under the Labor Code.

or knew that the latter would in all likelihood work in an unsafe place. No other conclusion was reasonably deducible from the evidence than that the employer violated a duty owed to his employee to provide a safe place to work and that his negligence in this respect was concurrent with the negligence of the general contractor or owner and proximately contributed to the employee's injuries.

 The evidence in the case now before us does not compel a similar conclusion. Contrary to the above cited cases at no time did Pratico brothers direct plaintiff to work in an area on the job which they knew to be unsafe. Indeed the uncontradicted evidence shows that at the beginning of the day the mixer was positioned in a safe spot. Nor is there any evidence that Pratico made the area unsafe or was in any way actively negligent in causing the 2x4 to be placed near the mixer or that, having knowledge of the piece of lumber, he permitted it to remain there. Under the evidence, the practices and operations adapted by the subcontractor for the job were reasonably adequate to render the employment and place of employment safe. (§ 6401.) Certainly it cannot be said in this respect that no other reasonable conclusion but that of Pratico's negligence is deducible from the record.

Furthermore, concurrent negligence as a matter of law cannot be sustained on a failure of Pratico to inspect the area near the mixer and thus discover the 2x4. It is well settled that the employer's duty to furnish a safe working place for his employees requires him " 'to make a reasonably careful inspection at reasonable intervals to learn of dangers not apparent to the eye.' [Citations.]" (*Devens* v. *Goldberg* (1948) 33 Cal.2d 173, 178-179 [199 P.2d 943]; *Cordler* v. *Keffel* (1911) 161 Cal. 475, 479 [119 P. 658]; *Rogers* v. *Ponet* (1913) 21 Cal.App. 577, 582 [132 P. 851]; Prosser on Torts (3d ed.) § 80, p. 546; 32 Cal.Jur.2d, Master & Servant, § 93, pp. 515-516.) This duty to inspect " 'must be continuously fulfilled and positively performed.' " (*Dyas* v. *Southern Pac. Co.* (1903) 140 Cal. 296, 308 [73 P. 972].) Whether it has been fulfilled depends upon the nature of the things or premises to be inspected, the character of the work and the danger to be anticipated if inspections are not made. (*Devens* v. *Goldberg, supra,* 33 Cal.2d at p. 179; *Cordler* v. *Keffel, supra; Dyas* v. *Southern Pac. Co., supra,* 140 Cal. at pp. 308-309.) "It was for the jury to determine whether a defective condition existed, whether a reasonable inspection would have

revealed the defect, and what constituted a reasonably adequate inspection in all the circumstances. [Citations.]" (*Devens* v. *Goldberg, supra,* 33 Cal.2d at p. 179.)

■ Souza testified that as the general contractor he supervised the construction site and "looked at everything, made sure everything was going right." There is no evidence that Pratico or his brothers left their places of work inside the building to inspect or supervise the work being done outside at the mixer. There is no evidence indicating when or how the 2x4 was placed or fell on the mixer. The record contains no evidence that anyone knew it was there before the accident. In the light of all the circumstances we cannot say that Pratico was negligent as a matter of law in respect to the inspection of the outside area where plaintiff was injured.

Finally, we observe that the trial court's finding of concurrent negligence as a matter of law cannot rest upon Pratico's furnishing a defective or unsafe cement mixer (§ 6401).[9] The only evidence on this point alluded to an alleged faulty clutch on the mixer and was received under the following circumstances: Defendant called as a witness Dr. Joseph H. Field, an orthopedist, who on behalf of California Compensation examined plaintiff on January 14, 1964, nine months after the accident. On direct examination the witness read the history which he took from Polisso on that day, which began with the following sentence: "The patient stated that on 4/7/63 he caught his left arm in the blades of a cement mixer *because of a faulty clutch on the mixer.*" (Italics added.) The doctor further testified that the words "faulty clutch" were plaintiff's. During the direct examination, no objection was interposed by either counsel for plaintiff or counsel for cross-defendants, appellants herein. At the beginning of the cross-examination by counsel for *plaintiff,* counsel for *appellants* asked the court to explain to the jury that Polisso's statements to Dr. Field may not be considered binding on appellants "on the ground they are purely hearsay as to them, regarding the quality of the acts." After a short colloquy, the court announced that it would "not so instruct the jury at this time," whereupon appellants' counsel moved to strike the doctor's testimony regarding plaintiff's explanation of the accident as hearsay as to appellants. Appellants contend that

---

[9]On the employer's duty to provide safe tools, machinery and appliances see *Hall* v. *Burton* (1962) 201 Cal.App.2d 72, 80 [19 Cal.Rptr. 797] and cases there cited.

the foregoing evidence was inadmissible and cannot now be relied upon to support the trial court's order.[10] We agree.

■ A statement of an agent to a third person is admissible in evidence against the principal to prove the truth of facts therein asserted, "if it was within the scope of the agency or authority, i.e., if the agent had express or implied authority to make that kind of statement for his principal." (Witkin, Cal. Evidence (1958) p. 260, citing McCormick on Evidence, p. 518; 4 Wigmore on Evidence (3d ed.) § 1078; see also Code Civ. Proc., § 1870, subd. 5; Rest.2d Agency, § 286; *Union Constr. Co.* v. *Western Union Tel. Co.* (1912) 163 Cal. 298, 304-305 [125 P. 242].) It nowhere appears in the instant record that plaintiff, a hod carrier, was an agent of Pratico with authority to make the statement in question. At the time of making the statement to Dr. Field, nine months after the accident, plaintiff was no longer in Pratico's employ. To be admissible against the principal, statements of an agent must have been made during the continuance of the agency and while the agent was acting in the course of the transaction entrusted to his care. (*Handley* v. *Guasco* (1958) 165 Cal.App. 2d 703, 708 [332 P.2d 354].) ■ Nor, in view of the time when it was made, is Polisso's statement admissible as a spontaneous declaration. (See *Lane* v. *Pacific Greyhound Lines* (1945) 26 Cal.2d 575, 582-583 [160 P.2d 21].)

We therefore hold that under the evidence reasonable minds are not impelled to the single conclusion of Pratico's negligence and that the jury could properly find, as it did, that Souza was negligent without also finding that Pratico was concurrently negligent. Under the circumstances it was error for the trial court to reduce the judgment in favor of plaintiff.

The result is this: plaintiff's judgment has been restored, as it were, to its original status as entered on the jury's verdict; a new trial on the issues raised by plaintiff's complaint has been *denied*; and Souza's appeal from such judgment has been abandoned and dismissed. However, the record discloses that the instant action was brought by the injured employee alone against the third party tortfeasor, Souza (see § 3856, subd. (b)) and that California Compensation did not bring an action on its own behalf against Souza (§ 3852) or join as a

[10]Defendant makes no claim that the point was not properly raised below. Nor could it be so urged since the original question to the doctor did not appear to be "bad on its face" and appellants promptly requested a limiting instruction and then upon the court's refusal, moved to strike. (See Witkin, Cal. Evidence (1958), pp. 742-743.)

party plaintiff in Polisso's action or file a complaint in intervention therein (§ 3853; cf. *Conner* v. *Utah Constr. & Mining Co., supra,* 231 Cal.App.2d 263; *Scott* v. *John E. Branagh & Son, supra,* 234 Cal.App.2d 435). The record discloses that California Compensation apparently permitted Polisso to bring the action alone and thereafter filed a lien against any judgment thereafter to be recovered by Polisso in the amount of its expenditures for compensation and medical paid to or on behalf of Polisso.[11] The trial judge's order denying the application of California Compensation for a lien on plaintiff's judgment has been reversed by our holding and such application is again pending for disposition. In sum, California Compensation sought reimbursement through plaintiff and by means of a lien on plaintiff's judgment.

The issue whether California Compensation was entitled to such recovery was raised by defendant's cross-complaint which asserted Pratico's concurrent negligence.[12] Since plaintiff's action was brought for the benefit of his employer and the latter's workmen's compensation carrier to the extent of the compensation benefits paid, defendant can properly invoke such concurrent negligence to defeat California Compensation's right of reimbursement. (*Witt* v. *Jackson, supra,* 57 Cal.2d 57, 72.) The trial court *granted* Souza's motion for a new trial on his cross-complaint.[13] As previously pointed out, one of the grounds specified in the order was the insufficiency of the evidence. We cannot say as a matter of law that there was no substantial evidence warranting a finding by the jury that Pratico was concurrently negligent and the order granting a new trial on the cross-complaint

---

[11]At the trial the parties stipulated that these expenditures were in the sum of $6,790 for temporary disability indemnity and $2,396.29 for medical. These total $9,186.29, the amount by which the trial judge reduced plaintiff's judgment.

[12]The gravamen of the cross-complaint was that the accident and "the injuries resulting therefrom to the said plaintiff ANTHONY POLISSO, were proximately caused by the negligence and carelessness" of Pratico and "that by reason of said negligence and carelessness, the judgment, if any, recovered by said plaintiff ANTHONY POLISSO in this action against the cross-complainant should be reduced by the amounts paid to said plaintiff" by California Compensation. The prayer of the cross-complaint was that "if the said plaintiff should recover in this action, that cross-complainant shall have judgment in his favor reducing any judgment in favor of plaintiff by the amount paid to said plaintiff by CALIFORNIA COMPENSATION AND FIRE COMPANY, as herein alleged; . . ."

[13]The order granting new trial was made on April 23, 1965 and thus prior to the 1965 amendment to Code Civ. Proc., § 657. (Stats. 1965, ch. 1749, p. 3922, effective September 17, 1965.)

must therefore be affirmed. (*Ferrel* v. *Safway Steel Scaffolds* (1962) 57 Cal.2d 651, 653 [21 Cal.Rptr. 575, 371 P.2d 311]; *Yarrow* v. *State of California* (1960) 53 Cal.2d 427, 434 [2 Cal.Rptr. 137, 348 P.2d 687]; *Hawk* v. *City of Newport Beach* (1956) 46 Cal.2d 213, 219 [293 P.2d 48]; *Richardson* v. *Ham* (1955) 44 Cal.2d 772, 775 [285 P.2d 269].) The evidence in the record and the inferences to be drawn therefrom are such that reasonable men could differ in their determination of the issue whether there was concurrent negligence on the part of Pratico proximately contributing to plaintiff's injuries. Such question therefore and the related question as to whether the application of California Compensation for a lien on the judgment should be granted or, on the other hand, denied and the judgment reduced by the amount of the claimed lien remain to be resolved.

The order filed April 23, 1965, insofar as it denies the motion of defendant Manuel Souza for a new trial on plaintiff's complaint and grants said defendant's motion for a new trial on his cross-complaint against cross-defendants John Pratico and California Compensation and Fire Company is affirmed. In all other respects said order is reversed. The parties will bear their own costs on appeal.

Molinari, J., and Sims, J., concurred.