[Civ. No. 21645. First Dist., Div. Two. Dec. 16, 1964.]

DAYTON JOE CONNER, Plaintiff and Respondent, v. UTAH CONSTRUCTION & MINING COMPANY, Defendant and Appellant; EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD., Intervener and Appellant.

264

266

268

Kilday, Nemer, Farbstein & Green, Donald F. Farbstein and Hession, Robb, Creedon, Hamlin & Kelly for Defendant and Appellant.

Boyd, Benson & Gregory, Herbert Chamberlin and Richard A. Boyd for Intervener and Appellant.

Naphan & Arne and Alfred R. Naphan for Plaintiff and Respondent.

TAYLOR, J.—Plaintiff Conner was injured on March 17, 1961, when he fell from an open second floor on the tower of the Oakland Municipal Airport, then under construction. He filed this action for personal injuries against the general contractor, Utah Construction and Mining Company (hereafter referred to as Utah). Utah cross-complained against the steel subcontractor, San Jose Steel Company (hereafter referred to as San Jose), and Conner's employer, the steel

erection sub-subcontractor, Statewide Steel (hereafter referred to as Statewide). The workmen's compensation carrier for Statewide, Employers' Liability Assurance Corporation (hereafter referred to as Employers) intervened against Utah to recover a stipulated amount of $8,852.33 in workmen's compensation benefits paid to Conner. The action against San Jose was dismissed at the beginning of the trial.

The jury awarded Conner $200,000 against Utah but exonerated Statewide. The jury also found in favor of Employers against Utah and awarded damages in the amount of $8,852.33. Subsequently, the trial court denied Utah's motion for a nonsuit, directed verdict, judgment notwithstanding the verdict, and motion for a new trial against Conner, but granted Utah's motion for a judgment notwithstanding the verdict or in the alternative for a new trial against Employers on grounds of insufficiency of the evidence and errors of law.

Utah appeals from the judgment on the verdict in favor of Conner and from the denial of its motion for a judgment notwithstanding the verdict against Conner. Employers appeals from the judgment notwithstanding the verdict in favor of Utah and the order granting Utah a new trial. The issues presented by these appeals concern the state of the evidence to sustain the various judgments and orders, certain alleged errors in the instructions to the jury and whether the trial court properly refused to extend the doctrine of *Witt* v. *Jackson*, 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641], to future benefits.

Viewing the facts most favorably to Conner, as we must on appeal, the record reveals the following: the eleven-story airport tower building was constructed of cement framed and poured by Utah with reinforcing steel beams fabricated by San Jose and erected and put in place by Statewide. By March 17, 1961, the second floor cement slab had been poured and set. The next step was the lifting and positioning of the exterior wall forms by Utah and then Statewide's placement of reinforcing steel bars or rebars vertically and horizontally along the exterior wall form or panel.

The irregularly shaped tower was designed in such a manner that when the entire perimeter of exterior wall panels had been erected, there would still be voids in the wall. On March 17, 1961, Utah had erected some but not all of the exterior wall panels around the perimeter of the second floor. At the south corner of the west main exterior wall panels where the accident occurred, the main wall panel was in place but the

return or wing walls had not been erected by Utah. Thus, except for the areas where the exterior wall panels were actually in place, the entire perimeter of the second floor was open. There were no railings or guard or hand rails. Several Utah carpenters and employees of other subcontractors, including cement finishers, plumbers, electricians and carpenters, were at work in the 40-foot by 40-foot accident area.

Utah coordinated and determined the order, location and timing of the work of the various subcontractors. Utah usually informed the subcontractors the day before where and when they were to proceed. White, Utah's project superintendent, had so informed Brashear (Statewide's superintendent and general foreman) the day before the accident. Thus, in accordance with industry custom, Brashear assumed that the second floor area was ''workwise'' and, therefore, told Conner, an experienced iron worker or rebar man, Procter, another experienced rebar man, and their foreman, Flint, to prepare the west wall form for the rebars. The three men went up to the second floor slab together and Flint directed Conner to get the hickey and straighten the steel dowels located in the southwest corner.

The dowels installed by Statewide projected upward out of the second floor concrete. Conner picked up a hickey, went to the southwest corner and began to straighten up the dowels. As he did so, he was facing the south edge of the west wall with his left side at the edge of the open second floor slab. He was wearing a safety belt and hooked it over one of the No. 9 dowels away from the wall panel.

There is conflicting evidence as to whether Conner properly used the hickey to straighten the dowels or improperly attempted to do so with his safety belt. Several workmen saw Conner as he lost his balance, slipped and fell to his left from the second floor to the level below. Conner fell about 15 feet and landed with his face striking the edge of some exposed unguarded vent pipes protruding from the ground floor. The nature and extent of the injuries suffered by Conner are not in issue.

I. UTAH'S APPEAL FROM THE JUDGMENT ON THE VERDICT IN FAVOR OF CONNER, AND THE ORDER DENYING ITS MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT.

An owner or general contractor exercising supervision over a project owes a common law duty to the employees of independent contractors to exercise ordinary care, to furnish them with a reasonably safe place in which to work or if there is danger attendant upon the work which arises from condi-

tions that are not obvious, to give the employee reasonable warning of such danger (*Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, 232 [282 P.2d 69]; *Dingman* v. *A. F. Mattock Co.*, 15 Cal.2d 622, 624 [104 P.2d 26]; *Delk* v. *Mobilhomes, Inc.*, 118 Cal.App.2d 529, 531 [258 P.2d 75]; *Oldham* v. *Atchison, T. & S.F. Ry. Co.*, 85 Cal.App.2d 214, 218 [192 P.2d 516]; *Jean* v. *Collins Constr. Co.*, 215 Cal.App.2d 410, 417 [30 Cal.Rptr. 149]; *Johnson* v. *Nicholson*, 159 Cal. App.2d 395, 406 [324 P.2d 307]). ■ The relationship between the general contractor and the employees of the subcontractor is equivalent to that of invitor-invitee (*Rodin* v. *American Can Co.*, 133 Cal.App.2d 524, 531 [284 P.2d 530]; *Biondini* v. *Amship Corp.*, 81 Cal.App.2d 751, 760 [185 P.2d 94]; *Lamar* v. *John & Wade, Inc.*, 70 Cal.App.2d 806, 809 [161 P.2d 970]; *Miller* v. *Pacific Constructors, Inc.*, 68 Cal. App.2d 529, 545 [157 P.2d 57]). ■ The area of invitation is dependent upon the nature of the work and the circumstances of the particular case (*Biondini* v. *Amship Corp., supra*). ■ Where the invitation, express or implied, extends to and includes a certain portion of the premises, the employee has a right to assume that he can enter the area without danger (*Florez* v. *Groom Development Co.*, 53 Cal.2d 347 [1 Cal.Rptr. 840, 348 P.2d 200]). ■ Such an employee-invitee while properly using a portion of the premises is not held to the duties of an inspector but is required to exercise only the same quantum of care in his own behalf that may be required of other invitees (*Miller* v. *Pacific Constructors, Inc.*, 68 Cal.App.2d 529 [157 P.2d 57]).

■ Where a general contractor not only exercises general supervision over a construction project but in addition controls the premises or the instrumentality causing the injury, he is an employer within the meaning of sections 6304 et seq. of the Labor Code[1] and is subject to the duties set forth therein (*Kuntz* v. *Del E. Webb Constr. Co.*, 57 Cal.2d 100 [18 Cal.Rptr. 527, 368 P.2d 137]). ■ The statutory duties imposed on an employer by the Labor Code are greater than those imposed by the common law rule generally applicable

---

[1]Section 6304: " 'Employer' shall have the same meaning as in section 3300 and shall also include every person having direction, management, control or custody of any employment, place of employment or any employee.''

Section 6305: " 'Employee' means every person who is required or directed by any employer, to engage in any employment, or to go to work or be at any time in any place of employment.''

to the invitor-invitee relationship and require the general contractor to maintain the ground over which a subcontractor's employee is engaged in a condition reasonably safe for those who might fall while working on the structure above (*Jean* v. *Collins, supra*).

In determining whether Utah was properly held accountable under the above principles, we are mindful that all conflicts must be resolved in favor of respondent Conner and all reasonable inferences indulged in to uphold the verdict. The power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury (*Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists*, 227 Cal. App.2d 675, 696 [39 Cal.Rptr. 64]).

It is undisputed that the structure on which Conner was working was under the management and control of Utah. Because of the nature of the construction, procedures which involve the coordination of the work of various subcontractors as well as Utah's cement pouring and the erection of wall panels with Statewide's erection of the rebars, Utah controlled the scheduling as to what the subcontractors were to do and when and where they were to work. Utah had full knowledge that there were no railings or other installations to protect employees of subcontractors on the second floor deck and knew that many persons of different crafts would be working on the second floor area. Utah's project engineer stated that the second floor was not guardrailed as he understood it was not required and it was not the practice as the rails would be in the way when the wall panels were placed. It may be inferred from Utah's control of the total project that it was aware of the unguarded vent pipes protruding from the ground floor upon which plaintiff fell.

We conclude that there was sufficient evidence from which the jury could find that Utah not only exercised general supervision over the construction but also was plaintiff Conner's employer within the meaning of the Labor Code, did not take reasonable precautions for plaintiff's safety, and that under the legal duties thus imposed was liable for his injuries. Where a general contractor knows from matters coming to his attention that work done by subcontractors or by people under the general contractor's direct supervision has created a type of dangerous condition which may reasonably be expected to result in injury unless precautions are

taken and that employees of other subcontractors may be exposed to the danger without being aware of its existence, he has a duty to exercise reasonable care to protect those employees and may be held liable if his failure to do so is a proximate cause of injury to them (*Kuntz* v. *Del E. Webb Constr. Co., supra,* p. 105). The motion for a judgment notwithstanding the verdict was properly denied.

### THE INSTRUCTIONS

 We now discuss briefly the instructions which Utah alleges were given in error. Utah claims that several misleading factual situations were given by the trial court to illustrate the control necessary to find a general contractor an "employer" of a subcontractor's employee with the resultant obligations owed under the provisions of the Labor Code and the applicable safety orders. We see no possible prejudicial error in these illustrations in view of the court's following admonition: "I cite these instances by way of example only and do not intend to imply that these are exclusive or are the only factual situations under which you may find such control to exist, or that such facts do or do not exist in this case. That is a question for you, the jury, to determine from the evidence in the case." The court's instructions defining the essential elements of control were sufficient and correctly given.

 The instructions on sections 413 and 416 of the Restatement of Torts[2] were proper as it is uncontroverted that Utah knew that there were no guardrails (*Courtell* v. *McEachen*, 51 Cal.2d 448 [334 P.2d 870]).

 Utah argues that the court erred in instructing the jury on the various applicable Construction Safety Orders.[3] We first note that the court properly instructed that whether these various orders were applicable was a question of fact for the jury's determination.

 Subdivision (54) of Construction Safety Order No. 1504 defines a platform as an elevated working level for per-

---

[2] Sections 413 and 416 of the Restatement of Torts are applicable to the liability of an owner or general contractor who should have recognized that his subcontractors' work would be likely to create a condition hazardous to others.

[3] None of the arguments concerning the General Industry Safety Orders are discussed herein as the record shows that these were not mentioned in the instructions to the jury. Utah first relied on the language of the General Industry Safety Orders (3215 of which specifically refers to an open-sided floor) to argue that the more general language of the Construction Safety Orders could not be applied to the open floor here involved. Conner in his reply brief thereafter cited both the General Industry Orders and the Construction Safety Orders.

sons, and Utah's contention that the second floor level was not a platform under this safety order is untenable.

 The trial court properly instructed on Construction Safety Order No. 1616.[4] In specifying where railings were to be placed, the words of said section "other elevations ten feet (10') or more above the ground, floor, or level underneath" would include the second floor upon which Conner was working and which was located 15 feet above the ground floor.

 The jury was correctly instructed on Construction Safety Order No. 1620 requiring floor and roof openings to be guarded. We do not agree with Utah's argument that this order applies only to hidden floor and wall openings and not to open-sided floors. Utah's reliance on *Giardina* v. *Bricken Textile Corp.* (1935) 268 N.Y. 572 [198 N.E. 410], interpreting a similarly worded New York City Building Code section, overlooks the fact that California's Construction Safety Order No. 1616, quoted in footnote 4, required railings on the open sides of all kinds of elevations. The record shows Utah was aware of the provisions of No. 1616.

 There is no merit in Utah's contention that the court erroneously told the jury that it was an insurer of Conner's safety by reading Construction Safety Order No. 1511, subdivision (a), which provides: "(a) Every reasonable effort shall be taken to insure the safety of workmen in all situations, whether or not provided for in these orders." In this context, the word insure was used and no doubt properly understood by the jury in its colloquial sense of *making certain* that all reasonable efforts had been expended, rather than as relating to Utah's legal liability as an insurer.

 Construction Safety Order No. 1512 concerning the removal of safeguards or safety devices was properly read to the jury in view of Carpentry Foreman Bell's testimony that he was not positive that there had not been a temporary rail when the second floor concrete slab was poured and Utah's position that there could be no safety rails at the same time as the wall panels were placed.

 Construction Safety Order No. 1503 permitting variances upon conditions specified by the authorities was likewise properly given in view of Utah's testimony that it placed no railings as it did not think they were required. This instruc-

---

[4] "(a) Railings shall be provided on all open sides and ends of all built-up scaffolds, runways, ramps, rolling scaffolds, elevated platforms, or other elevations ten feet (10') or more above the ground, floor, or level underneath."

tion bore on the question of whether Utah could arbitrarily neglect to install railings without providing approved alternate safety arrangements.

It was not necessary for the court to specifically instruct the jury that Construction Safety Order No. 1671, concerning safety belts, applied only to Statewide and not Utah since the only testimony on safety belts concerned Conner and Statewide.

Utah argues that Construction Safety Order No. 1635, incorporating sections 7100 and 7115 of the Labor Code, concerning temporary floors, was properly applicable rather than the safety orders read to the jury. But the second floor here in question was a permanent one. Furthermore, Utah did not submit or request any instructions based on these provisions and the matter cannot be raised for the first time on appeal (*Damiani* v. *Albert,* 48 Cal.2d 15, 18 [306 P.2d 780]).

Utah's contentions concerning certain alleged errors in the instructions on contributory negligence, assumption of risk, and the invitor-invitee relationship are likewise not supported by the record. The instructions given were correct and complete and were without error or misstatement.

Finally, we think the court rightly refused Utah's instruction based on *Witt* v. *Jackson,* 57 Cal.2d 57 [17 Cal. Rptr. 369, 366 P.2d 641]. In that case, the Supreme Court held that damages awarded to an injured plaintiff should be reduced by the amount of workmen's compensation benefits paid to the injured employee where the employer was negligent or where the employer's negligence contributed to the accident. The purpose of the holding was to prevent an injured workman from recovering both workmen's compensation benefits and damages from the third party tortfeasor.

Utah argues that the court should have given its instruction reducing Conner's recovery not only by the $8,852.33 already received in workmen's compensation benefits but also by any amounts he might recover in the future. Utah cites no authority for this unusual and impractical extension of *Witt* v. *Jackson, supra.* Furthermore, the record shows that the factual issue of future disability payments by Employers was not submitted to the jury. The instruction was properly refused.

Viewing the instructions as a whole, we conclude that there were no prejudicial errors. The trial court did a com-

mendable job of instructing the jury in a complex case. We conclude that the judgment on the verdict in favor of Conner should be affirmed.

II. EMPLOYERS' APPEAL FROM THE JUDGMENT NOT-
WITHSTANDING THE VERDICT IN FAVOR OF UTAH

██ A motion for judgment notwithstanding the verdict may properly be granted only when, disregarding conflicting evidence and indulging in every legitimate inference which may be drawn from the plaintiff's evidence, the result is a determination that there is no evidence sufficiently substantial to support the verdict. ██ On appeal, the appellate court must read the record in the light most advantageous to the plaintiff, resolve all conflicts in his favor and give him the benefit of every fact pertinent to the issues involved and which may reasonably be deduced from the evidence (*Quintal* v. *Laurel Grove Hospital,* *(Cal.App.) 38 Cal.Rptr. 749).

██ The jury's verdict absolved Statewide from all negligence and found in favor of Employers on its complaint in intervention to recover the $8,852.33 in workmen's compensation benefits paid to Conner. Utah's motion here was properly granted only if there is no evidence to support the verdict in favor of Statewide. The question is whether there was any evidence from which the jury could conclude that Statewide was not negligent and that Utah's liability was based solely on its own negligence. We think the evidence is such that the jury could not find that Utah was negligent without also finding that Statewide was concurrently negligent.

██ Statewide, as Conner's immediate and direct employer, was an ''employer'' under sections 3300, 6301-6304 of the Labor Code and required to comply with the applicable safety orders. ██ The mere fact that Utah could have been found to be an ''employer'' with a nondelegable duty does not prevent Statewide from having a simultaneous nondelegable duty to see to the safety of its workmen and to comply with the Labor Code and applicable safety orders (*Kuntz* v. *Del E. Webb Constr. Co.,* 57 Cal.2d 100 [18 Cal.Rptr. 527, 368 P.2d 137]; *Atherley* v. *MacDonald, Young & Nelson, Inc.,* 142 Cal.App.2d 575 [298 P.2d 700]). ██ It

---

*A hearing was granted by the Supreme Court on July 22, 1964; the final opinion of that court is reported in 62 Cal.2d 154 [41 Cal.Rptr. 577, 397 P.2d 161].

was incumbent on Statewide to provide some reasonably safe means for Conner to do his work, custom or policy to the contrary notwithstanding (cf. *Scott* v. *George A. Fuller Co.,* 41 Cal.App.2d 501, 507 [107 P.2d 55]).

The evidence is uncontroverted that Statewide sent Conner to work on the second floor and did nothing to stop him after he began to work in the unrailed area. There was evidence that the dowels needed straightening because they had been improperly placed by Statewide. When Brashear told Conner and the others to work on the second floor, he knew there were no guardrails. Statewide's foreman Flint was likewise aware of the absence of the guardrails when he told Conner to work at the edge of the floor where the accident occurred. Flint also knew the condition of the duct work below the second floor and knew the steel duct pipes were exposed. Flint made no effort to see to it that the opening was railed or to stop Conner after he had started working in the area. Flint was about to instruct Conner to use a hickey to straighten the dowels and have Procter help him when the accident occurred. Under these facts, a jury could only conclude that Statewide, as the immediate employer of Conner, had the primary duty to provide a safe place to work or to stop him from working in an unsafe area or in an improper manner, and that Statewide's negligence was a concurrent proximate cause of the accident.

We conclude that the judgment notwithstanding the verdict in favor of Utah was properly granted and should be affirmed.

The judgment in favor of Conner against Utah and the order denying Utah's motion for a judgment notwithstanding the verdict against Conner is affirmed. The judgment notwithstanding the verdict in favor of Utah and against Employers is also affirmed. The order granting the motion for a new trial is of no effect. (Code Civ. Proc., § 629.)

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied January 15, 1965, and appellants' petitions for a hearing by the Supreme Court were denied February 10, 1965.