[Civ. No. 32164.   Second Dist., Div. One.   July 9, 1968.]

BEVERLY AHRENTZEN, Plaintiff and Respondent, v.
ARTHUR H. WESTBURG, Defendant and Appellant.

Parker, Stanbury, McGee, Peckham & Garrett and Thomas E. Rubbert for Defendant and Appellant.

Martin C. Calaway for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment in favor of plaintiff in a personal injury action.

A résumé of some of the facts supporting the judgment is as follows: In the early evening hours of December 1, 1961, on the eastbound Ventura Freeway there was a series of collisions of automobiles. Plaintiff was driving a 1961 Corvair Monza (Chevrolet) equipped with bucket seats, easterly on the freeway. As she approached the scene where the accident in question occurred, she saw that there had been an accident ahead of her. The cars involved in that accident were stopped. The plaintiff brought her car to a stop to the rear of the (Brown) car ahead of her. While she was in such position she looked in her rear view mirror and saw car lights approaching in the lane directly behind her. She realized that an impact was imminent and thereupon removed herself from the driver's seat in an attempt to curl up in the passenger seat as she was terrified with the thought of being impaled upon the steering wheel of her car. After she so repositioned herself her car did not move until the impact of defendant's car with the rear of plaintiff's car where plaintiff's body was first thrown toward the rear of her car and then toward the front of her car. Plaintiff's lower back area struck the dashboard of her car.

Plaintiff suffered serious injuries to her low back area, consisting among other things of fractures of the sacrum and coccyx. There was considerable separation and probable tearing of the musculature of the left buttock, resulting in a marked deformity in the contour of the buttock. The investigating police officer stated that the damage to the rear of plaintiff's car was greater than was the damage to the front of her car and Mr. Brown, the driver of the car in front of plaintiff, stated that there was but one impact between plaintiff's car and his car. Defendant testified that he was driving about 20 miles per hour and that plaintiff's car was standing still at the time of impact. The jury could well have concluded that plaintiff came to a stop behind the Brown car and that her car was then struck from the rear by the defendant's car and shoved into the Brown car.

Appellant attempted to argue that other evidence should have been believed and in effect that the accident did not happen as plaintiff related it. Needless to say the jury apparently believed the plaintiff and her witnesses and disbelieved the defendant and his witnesses.

██ The plaintiff is not required to establish the fact of causation with absolute certainty. It is sufficient if there is evidence from which reasonable men could conclude that it is more probable that the defendant's conduct was a cause, than that it was not. (See *Love* v. *Wolf*, 249 Cal.App.2d 822 [58 Cal.Rptr. 42]; *Barclay Kitchen, Inc.* v. *California Bank*, 208 Cal.App.2d 347, 354 [25 Cal.Rptr. 383].) ██ The evidence must be viewed in the light most favorable to respondent. (*Estate of Arstein*, 56 Cal.2d 239 [14 Cal.Rptr. 809, 364 P.2d 33]; *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183].) As said in *Carrasco* v. *Bankoff*, 220 Cal.App.2d 230, 232 [33 Cal.Rptr. 673, 97 A.L.R.2d 464]: ''. . . the fundamental rule [is] that the power of this court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, that will support the judgment, and when two or more inferences can reasonably be deduced from the facts, it is without power to substitute its deductions for those of the trial court. . . .''

██ True it is that this court is not bound by evidence which is not substantial, or evidence which is inherently incredible or that which is inherently too weak or uncertain to create a conflict; however, the evidence relied upon by respondent in this case does not fall into any of the categories herein listed. The evidence was substantial and believable.

██ Appellant asserts that during the closing argument to the jury respondent's counsel was guilty of misconduct in showing that appellant was covered by insurance and the amount available. The chronology of events with reference to the question of insurance is as follows: plaintiff had been on the witness stand for some time and had testified with reference to her injuries and current problems. While under direct examination certain testimony[1] was elicited. She also told of

---

[1]''Q Now, aside from the pain that you are currently experiencing in the left leg and left buttock area, the traction that you are wearing at night, and this discomfort and pain going down into the foot area, is there anything else that you are experiencing that you associate with this accident or the injuries that followed it?

''A The tension of bill collectors.

certain orthopedic appliances, such as a neck brace, neck collar and the overhead traction for the bed which she used.

Upon cross-examination appellant immediately launched into questions with reference to certain insurance held by respondent.[2]

In the opening argument on the issue of damages, respondent's counsel listed on the blackboard for jury consideration, the special damages which had been suffered by respondent, in the sum of $27,000. Counsel also listed some of the elements of general damages, including pain, discomfort, fear, anxiety and other mental and emotional distress. With reference to the last items counsel said to the jury:

"What is discomfort worth, this discomfort of wearing this collar to stretch her neck every night? What is that worth?

---

"Q Besides the tension of bill collectors, did you have any general tension?

"A Well, it's rather difficult to rear three children under these conditions, the bill collectors constantly calling, and what have you. I would like to get myself a little more established.

"Q Are you able to stand at the present time?

"A I stand and walk much better than I sit. I prefer walking than sitting.

"Q Okay. Has that returned to the ability that you had before this accident occurred, however?

"A What do you mean?

"Q The ability to walk and the ability to stand; is that as good as it was before this accident?

"A Oh, no, no, of course not.

"Q And how does it differ?

"A Before the accident I had much more endurance. You take things like that for granted."

[2] "Q You say that much of your difficulty is that you are nervous and upset because of the bill collectors; is that right?

"A No, that's subsidary, [*sic*] but when——

"Q When did you start being worried about bill collectors in connection with this accident?

"A Right at the very beginning.

"Q As a matter of fact, *you had some of your bills paid by your insurance, didn't you?*

"MR. CALAWAY: Your Honor, I am going to object and move to strike; ask that counsel be cited for misconduct.

"THE COURT: I am going to deny the motion because it goes to the question solely of her nervous condition and the reasons therefor. With reference to any bills that have been paid, unless they were paid by the defendant, if the plaintiffs were entitled to recovery she would be entitled to recover those amounts regardless of the fact they may have been paid by some insurance or not.

"MR. ROBERTS: Thank you, sir.

"Q BY MR. ROBERTS: *You did have access to some insurance to pay some of these bills*, didn't you?

"A *I had $1,000 on my automobile.*

"Q *On your own?*

"A *On my own.*"

(Italics added.)

"She has had 1900 days, ladies and gentlemen, since this accident happened, give or take a couple of days. Some of these she has lived with every day. Some of them for a short period of time.

"The anxiety of going into an operation, the anxiety of having these needles stuck in your neck for diagnostic purposes, the fear that accompanies this type of thing.

"Pain and discomfort, I think, are the main ones, aside from one other; this No. 5.

"She got to the point where she couldn't live with her condition. She couldn't live with the economic stress. She couldn't live with the physical stress. That is why they sent her to a neuropsychiatrist, to help her adapt. Not to cure her but to help her be able to live with this type of thing that she has been saddled with."

Counsel then followed with the argument that omitting the special damages respondent should be entitled to a recovery of $100,000 and wrote that figure on the blackboard and referred to the figures saying:

"This is the sum that this injury is worth. She is entitled to adequate compensation. That is an adequate compensation.

"Thank you."

Towards the conclusion of appellant counsel's argument he stated:

"If this accident caused injury and if the negligence of Mr. Westburg caused injury, don't you have to find just the injury that would be the result of the type of accident that she was involved in? In other words, a rear-end collision.

"You have to find that first, and if you find any injury as a result of the rear-end collision with Mrs. Ahrentzen, *I submit to you that it isn't worth a thousand dollars,* the injury that Mr. Westburg caused." (Italics added.)

In the closing argument of respondent's counsel he argued, "The thought that you have been left with by Mr. Roberts is that if you bring in a verdict for the plaintiff in this amount, it will be unconscionable because it is too high." and further: "Don't just give her special damages. This is what she is entitled to [again referring to the $100,000 figure]. This is the big part of it here." Counsel then referred to the matter of liability and damages and stated:

"When I first put the figure on the board and he first started arguing the figure, he scoffed at this figure and said: 'how would you like to be Mr. Westburg?'

"Well, ladies and gentlemen, how would you like to be Mrs. Ahrentzen?

"This is not going to hurt Mr. Westburg. In no way is she going to get a new back.

"Mr. Roberts wants us to get a new television. You show me where they sell new backs and I will buy one. Put us back where we were before the accident occurred and that is good enough, we don't need any more.

"But you can't do that. You have got to give her dollars. You have got to give her dollars.

"Mr. Roberts brought out, and I think under a very thin subterfuge, the fact that Mrs. Ahrentzen got a thousand dollars from her own automobile policy to help defray these medical expenses. The subterfuge was that she didn't have the mental anguish of another $8,200 in bills, she didn't have the mental anguish of trying to raise three kids and no income, she didn't have all this anguish because she had a thousand bucks of it paid, and he brings this up, ladies and gentlemen, at a time—brings up the element of insurance, this $1,000, knowing full well that I can't bring up the same subject, and I have got a hundred reasons more than he has of doing it. Exactly a hundred.''

Appellant now asserts that he did not mention insurance in his argument and therefore respondent was guilty of improper conduct in bringing up new matter in his closing argument, further that respondent told the jury in effect what insurance coverage the appellant had. There is no merit to the assertions. Counsel for appellant initiated the reference to an insurance policy in his cross-examination of appellant, and in his argument to the jury attempted to have them believe that the payment under respondent's insurance policy was adequate compensation for all of the injuries suffered by respondent. It is clear that the reference by counsel for respondent was to the $100,000 as general damages. The trial judge, experienced in such trials, heard and saw the entire proceeding and he was convinced there was nothing improper or prejudicial in what was said and done by respondent's counsel. The judge denied a motion for a mistrial, a motion for a new trial and a motion for judgment notwithstanding the verdict.

Appellant relies heavily upon what is stated in *Hoffman* v. *Brandt*, 65 Cal.2d 549 [55 Cal.Rptr. 417, 421 P.2d 425] but the facts of that case are not the facts of the case at hand. In the *Hoffman* case the defendant argued in effect that a judgment against him would put him in the poor house (this was

untrue and known to be so at the time of the statement), the fact of any insurance was not before that jury, counsel for Brandt in effect admitted that the argument constituted intentional misconduct.

The verdict of $75,000 for respondent in the case at hand is not earnestly claimed to be excessive, nor is there a substantial claim that appellant was prejudiced by the words complained of or that he did not receive a fair trial. A full reading of the record in this case discloses that without doubt the result would have been the same whether the questioned remarks were or were not made. (See *Marcus* v. *Palm Harbor Hospital, Inc.*, 253 Cal.App.2d 1008 [61 Cal.Rptr. 702].) Furthermore, counsel for respondent made no request of the judge to admonish the jury to disregard such remarks. As stated in *Scott* v. *Times-Mirror Co.*, 181 Cal. 345, 367-368 [184 P. 672, 12 A.L.R. 1007]:

"Appellant has called attention to the alleged misconduct of the plaintiff before the jury. In some of the instances referred to objection was made, but in others no objection was interposed, and this group includes the principal claim of misconduct wherein the plaintiff in his argument to the jury, referring to the defendant, said: 'The rottenest corporation I know of in California to-day [*sic*] is this same corporation.' In no case was the court requested to instruct the jury that the conduct objected to was improper and that it was to be disregarded by them. Where the action of the trial court is not thus invoked the alleged misconduct will not be considered on appeal, if an admonition to the jury would remove the effect thereof. [Citations.] From an examination of the record on this point we are of the opinion that even if the plaintiff had been guilty of misconduct, an admonition from the court would have removed the effect thereof in every instance."

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.