[Civ. No. 25750. First Dist., Div. Two. Mar. 18, 1970.]

JOHN MOREHOUSE, Plaintiff and Respondent, v.
TAUBMAN COMPANY, INC., Defendant and Appellant.

552

## COUNSEL

Hanna & Brophy, Donald R. Brophy and Norman H. Abreu for Defendant and Appellant.

Lew M. Warden, Jr., for Plaintiff and Respondent.

## OPINION

**DAVID, J. pro tem.**\*—Defendant Taubman Company, Inc. (herein referred to as "Taubman") appeals from a judgment entered upon a verdict

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

of $62,763 awarded laborer John Morehouse for serious personal injuries. The principal issues relate to defendant's relationship to him and its duties of care toward him at the construction site of the Southland shopping center in Hayward, where his injuries occurred.

On May 4, 1964, a concrete floor was being poured at the mall level of the building, above the basement level. An outside wall had already been constructed which rose adjacent to and approximately to the level of the slab being poured. A trench had been excavated outside the wall which extended out about 3 feet from the bottom of the wall at its base, then sloped upward and outward. The depth to which this had been back-filled was disputed at the trial, but there is adequate evidence from which the jury could validly conclude the wall at the situs of the accident was 10 feet or more in height.

■ Professor Francis Moffitt's analysis of shadows on aerial photographs to establish the height of the wall was equivocal. While produced by plaintiff the testimony at best produced a conflict in plaintiff's evidence, to be resolved by the jury. The issue was not a matter to be determined by expert testimony. Though the analysis of the aerial photos, as a method, might require an expert (*Bellus* v. *Peters* (1913) 165 Cal. 112, 117, 119 [130 P. 1186]; *Martinelli* v. *Poley* (1930) 210 Cal. 450, 455 [292 P. 451]), the rule asserted by appellant is abrogated by Evidence Code section 785. The wall did not have a railing, as was required of walls 10 feet in height or over by the applicable safety orders.[1]

---

[1]Applicable provisions reflected in the instructions included the following Construction Safety Orders:

Section 1616: "Railings shall be provided on all open sides and ends of all built-up scaffolds, runways, ramps . . . elevated platforms, or other elevations ten feet (10′) or more above the ground, floor, or level underneath."

Section 1511: "(a) Every reasonable effort shall be taken to insure the safety of the workmen in all situations, whether or not provided for in these orders. (b) No worker shall be required to work in an unsafe place unless for the purpose of making it safe, and then only after proper precautions have been taken to protect him while doing such work."

Section 1640: "(a) Scaffolds shall be provided for all work that can not be done safely by workmen standing on permanent or solid construction, except where such work can be safely done from ladders."

Section 1502: "These orders establish minimum safety standards wherever employment exists in connection with the construction, alteration, repairing, renovation, removal, or wrecking of any fixed structure or its parts."

Section 1504: Subsection 54 defines the word platform as "an elevated working level for persons." Subsection 59 defines the word "ramp" as "a surfaced sloping passageway connecting two different levels." Subsection 60 defines the word "runway" as "an elevated passageway." Subsection 68 defines the word "scaffold" as "the complete scaffold structure, including the platform and all supporting members."

Section 1620: "(a) If sheathing or any other surfacing provides a passageway that extends to any side of a floor or roof opening through which a man might fall, such opening shall be covered with planks or other secure covering of adequate

■ Appellant vigorously contends that as the general contractor for the construction, its liability here was limited to the Labor Code and safety code provisions. It asserts it was prejudicial error to allow the jury to consider the question of duty based upon general tort doctrine. We disagree.

Morehouse was standing on top of the wall, his back toward the outside excavated trench, facing the area where the concrete slab was being poured. His job was to spread and level concrete after it was dumped into place by a concrete power buggy and then to scrape out the buggy's bucket.

Xavier Wanzo operated a concrete buggy bringing a load of concrete. As the buggy was "creeping along" it suddenly "lurched forward" grazing Morehouse, causing him to fall backwards over the top of the wall and down to the ground below, sustaining serious personal injuries. The entire load of concrete was dumped on Morehouse. A judgment dismissing plaintiff's complaint against Wanzo was reversed (*Morehouse* v. *Wanzo* (1968) 266 Cal.App.2d 846 [72 Cal.Rptr. 607]). A cross-complaint by the insurance carrier of Morehouse's employer was dismissed. Such piecemeal determination in advance of the trial of the principal action was inappropriate.

Appellant does not question on this appeal either the injuries sustained or the amount awarded by the jury.

---

strength to support any load that might be placed thereon, or it shall be fenced on all sides by a railing.

"Openings in concrete forms must be similarly safeguarded as soon as the form sheeting surrounds the opening and until the hazard is eliminated by placement of reinforcing steel or completion of permanent protection. . . .

"(c) All planks, railings, or barriers guarding floor, roof, or wall openings shall be left in place until further construction provides permanent protection or an effective hazard control. Work shall be arranged so that openings are left unprotected for the least time possible during the transition from temporary to permanent safeguards."

Section 1615: "Railings required by these orders, except as otherwise provided, shall conform to the following standards:

"(a) Railings shall be constructed of wood, as follows, or in an equally substantial manner from other materials, and shall be not less than forty-two inches (42″) nor more than forty-five inches (45″) in height from the upper surface of the top rail to platform or working level. Additional rails may be added if desired. 'Selected Lumber,' free from damage that affects its strength, shall be used for railings constructed of wood.

"(b) Wooden posts shall be not less than two inches by four inches (2″ x 4″) in cross section, spaced at eight feet (8′) or closer intervals. . . .

"(f) Light wood barrier members resting on barrels, boxes, or other makeshift supports shall not be used as a railing substitute."

Section 1512: "Safeguards, safety devices, or safety appliances shall not be made ineffective or removed as long as the hazard exists, except for the purpose of making repairs or adjustments, in which case adequate substitute precautions shall be followed until they are back in service."

All of the quoted sections and parts thereof were considered and employed in *Conner* v. *Utah Constr. & Min. Co.* (1964) 231 Cal.App.2d 263 [41 Cal.Rptr. 728].

The primary issue on this appeal concerns the status of the defendant and appellant to Morehouse. Taubman Company, Inc. was the general contractor for construction of the Southland shopping center. It subcontracted the concrete work to Conco (Conco Cement Corporation, Division of Gonsalves & Santucci, Inc.), which was to pour, place and finish concrete furnished at the jobsite by Taubman, which it was doing when Morehoues was injured. Morehouse was employed by Conco. Wanzo was an employee of Taubman, working that day for Conco on loan from Taubman by agreement. Such "loans" were under authority of Schirrmacher, Taubman's general labor foreman.

In relation to the work then being done, Taubman furnished the concrete poured by Conco, and furnished grades to establish elevation and cambers during the pours. Through Schirrmacher, or its superintendent of physical construction, Drinkward, Taubman designated where Conco was to pour concrete and determined how much concrete was necessary and ordered it.

Taubman's carpenters built the forms for the mall level cement slab being poured, had constructed the wall on which Morehouse was standing and its footings, and had been responsible for excavation and backfilling along the wall. Under its contract with Conco, Taubman specified that it retained authority under certain conditions to order Conco's employees to work overtime, and to dismiss Conco employees deemed "incompetent, improper or a hindrance to progress of any of the work on the project."

Taubman maintained a crew of carpenters whose functions included installing guardrails at Southland; and in practice, at least, provided guardrails and safety devices. There was testimony both that it was Taubman's policy to place guardrails around openings or edges of slabs above 10 feet in height and that these were installed around the perimeter of slabs where there was a dropoff, regardless of elevation. ■ While evidence that Taubman's carpenters installed handrails at the point where Morehouse fell following his injury was not admissible to prove negligence of Taubman (Evid. Code, § 1151) it was properly limited (Evid. Code, § 355) and received by the court, on the issue of control of the premises, and as to whose duty it was under the contract to take such safety measures. (*Baldwin Contracting Co.* v. *Winston Steel Works, Inc.* (1965) 236 Cal.App.2d 565, 573 [46 Cal.Rptr. 421].)

The duties and liabilities of Taubman are not resolved solely by the general doctrines of negligence applying to general and special employers, independent contractors, and as between master and servant or invitor-invitee. (*De Cruz* v. *Reid* (1968) 69 Cal.2d 217, 228-229 [70 Cal.Rptr. 550, 444 P.2d 342].)

■ In 2 Restatement Second of Torts, section 416, the rule is stated

(p. 395): "One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

This rule was approved in *Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 254 [66 Cal.Rptr. 20, 437 P.2d 508]. In *Woolen* v. *Aerojet General Corp.* (1962) 57 Cal.2d 407 [20 Cal.Rptr. 12, 369 P.2d 708], it was held that although the evidence was sufficient to support the judgment, the judgment should be reversed because the liability of defendant was not limited to that of "employer" as defined in Labor Code sections 6400 and 6401. The court stated (at p. 413): "Although the jury could find from the evidence that defendant was under a duty to exercise reasonable care to provide in some manner for the taking of precautions as required by the rule set forth in section 413 of the Restatement of Torts, the *Labor Code was not the measure of defendant's responsibility*" (italics ours). The court (at p. 413) held that an owner of premises who only exercised general supervision and control to bring about a satisfactory completion is not an "employer" within the meaning of the safety provisions of the Labor Code, and that it was not the responsibility of such an owner, doing no more, to assure compliance with safety provisions applicable to an independent contractor doing the work. Therefore, instructions to the effect that the owner had a duty of inspection to insure compliance were held erroneous and prejudicial.

In *Ferrel* v. *Safway Steel Scaffolds* (1962) 57 Cal.2d 651 [21 Cal.Rptr. 575, 371 P.2d 311], it was held that the owner of premises could be liable, where its employees saw the work going on under the conditions of unreasonable risk of bodily harm unless special precautions were taken which were not taken. This is based upon 2 Restatement Second of Torts, section 413. But the comments clearly indicate (pp. 385-386), "This Section has no reference to such a general anticipation of the possibility that the contractor may in some way be negligent. It is not concerned with the taking of routine precautions, of a kind which any careful contractor could reasonably be expected to take, against all of the ordinary and customary dangers which may arise in the course of the contemplated work. . . . It has reference only to a special, recognizable danger arising out of the work itself."

Subdivision (e) of the comments (*supra,* at p. 386) states, "The fact that the contract under which the work is done provides that the contractor shall take the necessary special precautions does not necessarily relieve

the employer from liability, since he may be liable under the rule stated in § 416."

■ In 2 Restatement Second of Torts, it is provided (p. 387): "§ 414 Negligence in Exercising Control Retained by Employer

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

Comment b to this section is applicable here: "b. The rule stated in this Section is usually, though not exclusively, applicable when a principal contractor entrusts a part of the work to subcontractors, but himself or through a foreman superintends the entire job. ■ In such a situation, the principal contractor is subject to liability if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care should know that the subcontractors' work is being so done, and has the opportunity to prevent it by exercising the power of control which he has retained in himself. So too, he is subject to liability if he knows or should know that the subcontractors have carelessly done their work in such a way as to create a dangerous condition, and fails to exercise reasonable care either to remedy it himself or by the exercise of his control cause the subcontractor to do so."

■ A general contractor may be liable to an employee of a subcontractor. ■ Under the rule that one who employs an independent contractor to do work which the general contractor as employer should recognize as necessarily creating during its progress conditions containing an unreasonable risk of bodily harm to others unless special precautions are taken, such an employer is liable for bodily harm resulting from the absence of such precautions (a) if the employer fails to provide in such contract that the subcontractor shall take such precautions (b) or fails to exercise reasonable care in some manner for taking such precautions. ■ Any question whether the general contractor might reasonably have been expected to know of the danger, or whether a plaintiff was fully aware of it is left to the trier of the fact. (*Ferrel* v. *Safway Steel Scaffolds, supra,* 57 Cal.2d 651, 656.)

The evidence in this case shows full knowledge of the danger by Taubman. ■ While contractual provisions existed under which Conco assumed an obligation to supply safeguards, Taubman was not exonerated because: (1) the erection of guardrails generally was undertaken by Taub-

man; (2) as in *Vegetable Oil Products Co.* v. *Superior Court* (1963) 213 Cal.App.2d 252 [28 Cal.Rptr. 555] (duty may be predicated on knowledge of the danger), Taubman's foremen were indicating the slab pour to be made, and they are chargeable with knowledge of the condition of the situs and its danger; (3) Taubman had a duty under its general contract to provide safeguards, and this could not be delegated. In fact, it kept a crew busy providing them in instances where any one of the subcontractors did not. (*Woolen* v. *Aerojet General Corp., supra,* 57 Cal.2d 407; *Ferrel* v. *Safway Steel Scaffolds, supra,* 57 Cal.2d 651.)

A general contractor is an employer of his subcontractor, under the foregoing rules.

The evidence likewise is sufficient to support a determination that Taubman fell within the statutory definition of "employer" under Labor Code section 6304 as a person having direction, management, control, or custody of any employment, *place of employment,* or any employee.

 Application of the statutory definition to Taubman under the evidence, was a factual question, properly presented to the jury. (*Mezerkor* v. *Texaco, Inc.* (1968) 266 Cal.App.2d 76, 93-94 [72 Cal.Rptr. 1, 639].)

One who falls within the definition is subject to the safety orders promulgated pursuant to the code, as well as to the duties stated in the Restatement, Torts, *supra;* and the common law duty of the general contractor having control of the site to furnish the employees of a subcontractor a reasonably safe place to work. (*Kuntz* v. *Del E. Webb Constr. Co.* (1961) 57 Cal.2d 100, 104 [18 Cal.Rptr. 527, 368 P.2d 127]. Consult also: *Van Arsdale* v. *Hollinger, supra,* 68 Cal.2d at p. 255; *Ferrel* v. *Safway Steel Scaffolds, supra,* 57 Cal.2d at p. 655, relative to liabilities of owners employing a general contractor.) The same principles are applicable as between the general contractor and employees of a subcontractor (*Conner* v. *Utah Constr. & Min. Co., supra,* 231 Cal.App.2d 263).

 Thus there is evidence to support the view that Labor Code sections 6401, 6402, 6403, 6404 and 6405 were applicable to Taubman as such an employer under the statutory definition. It was not error to include safety orders promulgated pursuant to the code among the instructions to the jury. The duties of such an employer are nondelegable (*Alber* v. *Owens* (1967) 66 Cal.2d 790, 792 [59 Cal.Rptr. 117, 427 P.2d 781]), and since the code provisions establish a statutory duty of care, a breach of the same is negligence per se (*Alber* v. *Owens, supra,* p. 794.) Since the duty is nondelegable, any attempted exculpation by virtue of the contractual provisions between the owner, Taubman as general contractor, and Conco as subcontractor, does not affect plaintiff's right to recover.

Orders by the Division of Industrial Safety by authority of Labor Code sections 6312 and 6500 impose "more specific duties under this general statutory obligation." (*Alber* v. *Owens, supra,* p. 794.)

Appellant contends that there was prejudicial error in instructions given the jury:

(1) In response to a request from the jury, the court repeated the rules of law concerning the responsibility of a general contractor working for a subcontractor. The contention that the response was an incorrect adaptation of language contained in *Woolen* v. *Aerojet General Corp., supra,* 57 Cal.2d 407, is not tenable. Taubman's counsel in the course of the trial stated that the instructions pertaining to the issue of whether Taubman was a statutory employer "were properly framed and put to the jury." The instruction complained of had previously been read to the jury, in substantially the same language, without objection. ▄▄▄ In the absence of any indication before us which party requested the challenged instruction in the first instance or the preceding instruction, it is presumed to have been given at appellant's request (*Lynch* v. *Birdwell* (1955) 44 Cal.2d 839, 847 [285 P.2d 919]). We do not find that the instruction as given was either erroneous or prejudicial. While appellant now formulates an instruction which it is claimed should have been given, none was tendered to the trial court. This invalidates the argument presented here. (*Townsend* v. *Butterfield* (1914) 168 Cal. 564, 569 [143 P. 760].)

(2) Because the court instructed the jury upon a *theory* of the case "previously abandoned" by respondent. The pretrial conference order listed the *issue* whether Taubman was obliged by law to provide plaintiff with a safe place within which to work and/or to provide guardrails on the elevated portions of the building upon which plaintiff was working. This issue was always before the court and jury and was not abandoned. An indication in chambers that plaintiff proposed to proceed under the Labor Code provisions rather than under an invitor-invitee situation (cf. *Jean* v. *Collins Constr. Co.* (1963) 215 Cal.App.2d 410, 415-416 [30 Cal.Rptr. 149]) did not change the ultimate issue. Despite appellant's claim here, the instructions given did not constitute prejudicial error.[2] In this regard, it is to be noted that the duties concerned under the common law and Civil Code section 1714 and those stated in Labor Code sections 6401, 6402, 6403 and 6404 in some degree overlap. (Cf. *Kuntz* v. *Del E. Webb Constr. Co., supra,* 57 Cal.2d 100.) ▄▄▄ The possessor of premises has a duty of care toward those upon them. Their status is only one

---

[2]The trial court refused plaintiff's proposed instruction 37 based on *Johnson* v. *A. Schilling & Co.* (1961) 194 Cal.App.2d 123, 133 [14 Cal.Rptr. 684], on the ground that it related to an invitor-invitee relationship.

**560**

factor. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561]; re obviousness of danger, consult: *Beauchamp* v. *Los Gatos Golf Course* (1969) 273 Cal.App.2d 20, 34 [77 Cal.Rptr. 914].) ■ While it is the duty of the trial court to give instructions requested by a party upon his reasonable theory of the case if the evidence permits (*Borenkraut* v. *Whitten* (1961) 56 Cal.2d 538, 546 [15 Cal.Rptr. 635, 364 P.2d 467]), it is likewise competent for the court to instruct upon every theory finding support in the evidence (*Leming* v. *Oilfields Trucking Co.* (1955) 44 Cal.2d 343, 352 [282 P.2d 23, 51 A.L.R.2d 107]) whether it comports with a party's theory or not (*Thomas* v. *Buttress & McClellan, Inc.* (1956) 141 Cal.App.2d 812, 819-820 [297 P.2d 768]). We find nothing to indicate that appellant was faced with unsuspected issues on which to respond with additional evidence. No issue was withdrawn from the case. Counsel was fully aware of the broad scope of the pleadings and pretrial order.

The plaintiff's proposed instructions on their face noted reliance throughout upon the decision of this court in *Conner* v. *Utah Constr. & Min. Co., supra,* 231 Cal.App.2d 263. ■ Any real prejudicial surprise to appellant's detriment by a change of theory, requiring additional testimony, must be met by a motion to reopen the defense to meet the situation. (Cf. *Finn* v. *Witherbee* (1954) 126 Cal.App.2d 45, 49 [271 P.2d 606, 45 A.L.R.2d 1215].) Denial of the motion for new trial forecloses this contention.

Appellant does not show in any manner that a different jury verdict would have been probable had the instruction not been given. ■ But it was not error to give it in the first place.[3] All instructions are to be

---

[3]The following instructions were given by the court: " 'If you conclude Taubman Company was not an employer of the plaintiff then the safety laws and orders do not apply to any duty owed by the defendant to the plaintiff. You may still decide whether or not Taubman Company were negligent or had any duty under the contract or assumed any duty by having undertaken to put up guardrails and to provide—or to provide a safe place to work, and having failed to fulfill such duty.' "

"There isn't any specific code section referring to that. I have given you the general law and from that you are going to have to determine whether the specific code sections regarding the safety orders and safety laws apply or not, and I have already told you and repeat it just now that the statutes and safety orders govern the rights and obligations of persons other than those included within the employer-employee relationship in the usual sense, and include those between a general contractor and an employee of a subcontractor where the rights and duties in question relate to a place of employment under the direction, management, control and custody of the general contractor."

"Then the question is: 'Which of these take precedence, the contract or the code?'

"Well, each governs in its own field in so far as applicable. You have been told

considered together and as a whole, and the thrust of the remaining instructions, in reference to liability dependent upon appellant's status as an employer, as defined by the Labor Code statute, was adequate.

■ Appellant contends, finally, that adversary counsel repeatedly was guilty of prejudicial misconduct, giving five citations to the reporter's transcript and alleging other unspecified instances. The proper forum for such a contention is the trial court. (Cf. *Simonet* v. *Frank F. Pellissier & Sons* (1943) 61 Cal.App.2d 41, 45 [141 P.2d 922].) We will not search the record to assay the "cumulative effect" of asserted misconduct (cf. *Haynes* v. *Gwynn* (1967) 248 Cal.App.2d 149, 151 [56 Cal.Rptr. 82]). "When the trial court passes it we will assume that it was not prejudicial unless the appellant does more than has been done here in merely citing the instances and labeling them as misconduct." (*Healy* v. *Market Street Ry. Co.* (1940) 41 Cal.App.2d 733, 739 [107 P.2d 488].) In the five instances cited to us by appellant, the record reveals that counsel only raised objections twice; and counsel in citing one of such instances forbears frankness by failing to quote the ensuing reproof of the court and his adversary's response and apology. ■ So far as we are advised appellant never requested the court to admonish the jury to disregard the allegedly prejudicial comments of counsel, and therefore the objections are deemed waived. (*Horn* v. *Atchison, Topeka & Santa Fe Ry. Co.* (1964) 61 Cal.2d 602, 610 [39 Cal.Rptr. 721, 394 P.2d 561].) It does not appear that an adverse effect, if any, would not have been removed by such an admonition. (*Marcus* v. *Palm Harbor Hospital, Inc.* (1967) 253 Cal.App.2d 1008, 1014 [61 Cal.Rptr. 702]; *Ahrentzen* v. *Westburg* (1968) 263 Cal.App.2d 749, 755 [69 Cal.Rptr. 916].)

In denying a new trial the trial judge who was there did not consider the defendant was prejudiced. In reading the cold record, we who were not there are of the same mind.

The order denying the motion for judgment notwithstanding the verdict

---

how to apply them, and you will have to follow the instructions in so far as that question is concerned.

"Then the last question is: 'If we conclude that Taubman Company was not the employer of John Morehouse, does this determination terminate the trial and meet the instructions of the court?'

"The answer: If you conclude Taubman Company was not an employer of the plaintiff, then the safety laws and orders do not apply to any duty owed by the defendant Taubman to the plaintiff.

"You may still decide whether or not Taubman Company were negligent or had any duty under the contract or assumed any duty by having undertaken to put up guardrails, if you find it did so do, or to provide a safe place to work, and failed to fulfill such duty."

is affirmed. The appeal from the nonappealable order denying the motion for new trial is dismissed (Code Civ. Proc., § 904.1). The judgment is affirmed. The order of March 3, 1967, taxing costs and allowing the same against defendant is affirmed.

Shoemaker, P. J., and Taylor, J., concurred.