BEA, J., dissenting.
—I believe the record below compels an appellate court to affirm denial of the suppression motion.
(1) The magistrate had sufficient evidence before him reasonably to conclude appellant (hereafter defendant) Cooney consented to the search of her entire residence for a gun.
(2) He correctly applied the law that consent to search constitutes a waiver of Fourth Amendment protection to the extent of the search to which consent was given.
(3) Defendant having consented to a search for such an object, this court can and should find the officer’s entry into a locked closet at defendant’s residence meets the constitutional standards of reasonableness. (See People v. Williams (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221], cert. den. 488 U.S. 1050 [102 L.Ed.2d 1006, 109 S.Ct. 883].)
I do not reach the question whether the key to the closet was properly procured, or whether the defendant’s daughter had authority to consent to a search of the closet. I don’t think the court needs to determine those issues to decide this case.

1. Review of evidence before magistrate.

As the majority relate, the magistrate heard evidence at the preliminary hearing that defendant consented to a search of her residence for a gun.
“Q. All right. Before you [Sergeant Haggett] left the scene of the detention of the Bonneville, did you ask Ms. Cooney if you could go to her residence and look for a gun?
*Supp. 8 “A. Yes.
“Q. How did she respond? “A. She said yes; . . .
“Q. She [defendant Cooney] told you you could go to the 1051 Fitzgerald Street and look there for the gun?
“A. Yes.
“Q. What did you do then?
“A. I went to 1051 Fitzgerald Street.”
This is sufficient evidence for a reviewing court to find that the magistrate correctly determined defendant consented to a search of her residence for a gun. (People v. Williams, supra, 45 Cal.3d at p.1301.)
The gun was found at the defendant’s residence, in a locked closet.
2. Scope of consent to search residence for a gun.
A warrantless search may be justified by showing that the individual whose premises or effects were searched voluntarily consented to the search. (Schneckloth v. Bustamonte (1973) 412 U.S. 218, 219 [36 L.Ed.2d 854, 858, 93 S.Ct. 2041], cited ante by the majority.)[1]
*Supp. 9 Where consent, rather than a warrant, is the basis for the search, the scope or extent of the consent is tested by “objective reasonableness”: “What would the typical reasonable person have understood by the exchange between the officer and the suspect?” (Florida v. Jimeno (1991) 500 U.S--[114 L.Ed.2d 297, 111 S.Ct. 1801] (Jimeno))
This formulation of how to determine the extent of the consent to search seems to me to posit a familiar fact question, of the kind dealt with in courts daily when issues of property or contract are determined. It should be decided by the trial court under the first of the three Williams tests, and reviewed by the Appellate court under the “deferential substantial-evidence standard.” (People v. Williams, supra, 45 Cal.3d 1268, 1301.)
In reviewing the trial court’s determination that the defendant’s consent to search the entire premises included the location where the gun was found, we can be guided by concepts familiar to the common law of property and trespass. (See California v. Acevedo (1991) 500 U.S._[114 L.Ed.2d 619, 627-628, 111 S.Ct. 1982], conc. opn. of Scalia, J.)
Trespass is both a crime and a tort. (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 604, p. 704.)
Were Sergeant Haggett to be prosecuted for unauthorized entry of property (Pen. Code, § 602.5), or sued by defendant Cooney for damages in a civil action for trespass, lack of consent would be an element of the crime charged, and presence of consent would be an affirmative defense to the tort action.
In such actions, and upon the evidence quoted from the preliminary hearing transcript above, I believe that Sergeant Haggett would be entitled to an instruction that consent to search in the closet would be a defense. Indeed, failure to so instruct would be reversible error in either a civil or criminal action. (Morehouse v. Taubman (1970) 5 Cal.App.3d 548, 560 [85 Cal.Rptr. 308].)
*Supp. 10 The reason for my conclusion is simply that a person given consent to search for a gun in a residence can reasonably be expected to look for the gun in a closet, probably a locked closet.
This is especially so if there are other persons—such as defendant’s daughter—in the house.
Add to that general reasonable expectation, this evidence as to what Sergeant Haggett knew at the time he went looking for the gun in defendant’s Fitzgerald Street residence:
“A. I told her [defendant’s daughter at 1051 Fitzgerald] that we had her mother, Ms. Cooney, in custody and I was looking for the gun that she had.
“Q. And how did the woman who you spoke with respond to that?
“A. She says, ‘Yes, she keeps a gun in the closet’; pointed to the closet.”
I am aware that the magistrate made no such explicit conclusion as I have made here as to the scope of the search to which defendant consented, through her words regarding search for a gun.
He simply found that the defendant consented to a “search of the premises.”
Appellate courts are called upon to review and decide upon the magistrate’s action not his or her reasoning. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 259, p. 266 (and cases cited therein).) That the magistrate reached a correct result without the reasoning I propose should not deter us from affirming his decision.
In my respectful opinion, the majority err in the following particulars:
1. They conclude defendant did not consent to the search of the locked closet based on a factual assumption made upon ambiguous evidence: that defendant (a) knew the closet was locked and (b) that the (sole) key was in her possession. (Maj. opn., ante, p. Supp. 5.)
Defendant Cooney did not testify at the preliminary hearing, so there is no direct evidence of what she knew or thought on these subjects.
Indeed, the evidence allows, but does not compel, a contrary conclusion: that she neither knew the closet was locked, nor that the sole key to the closet was in her possession.
*Supp. 11 The defendant consented to the search of the residence for a gun, and did not limit the area of search. There is no evidence she stated an exception for a locked closet from her consent to search her residence.
From that, the officer could reasonably conclude all areas could be searched by any reasonable means available to him. This would include moving furniture, crawling in creep holes in the ceiling, and picking locks on locked closets.
Significantly, when the defendant’s daughter stated the gun was in the locked closet, the daughter herself set about looking for the key to the closet inside the residence, rather than telling the officer the defendant had the key. This is evidence that (1) the key might not always be kept in the possession of the defendant, or (2) that another key was kept on the premises, with access to it permitted to the daughter.
If the evidence is capable of two conclusions, and as the court should apply the “deferential substantial-evidence standard” (see People v. Williams, supra, 45 Cal.3d at p.1301), I submit the majority should not conclude as a matter of law it was “unreasonable to conclude [from the fact that defendant-appellant had the key in her possession] that appellant’s consent to the search of her home . . . included consent to search the locked closet.” (Maj. opn., ante, p. Supp. 5.)
Rather, the court should allow the finding of fact by the court below to stand if evidence can support a contrary finding, as I believe it does.
2. The majority also overlook a crucial fact: that the consent was not simply to search the residence, but to search it for a specific item: the gun.
In the Jimeno case, cited by the majority, there was no evidence that Jimeno consented to the search of the briefcase for any specific item that could reasonably be expected to be inside the briefcase. (Jimeno, supra, 500 U.S. _ [114 L.Ed.2d 297].)
Suppose that the subject of the search in Jimeno had been stolen securities, and that Jimeno had consented to a search of his automobile’s trunk for securities? Can we say that a briefcase is not a “likely container” for the sought object? (See U.S. v. Ross (1982) 456 U.S. 798, 821 [72 L.Ed.2d 572, 591, 102 S.Ct. 2157].) Had such object-specific consent to search been given, I submit the decision would have gone the other way.
The rule I adduce from the decided cases is a narrow one. Where given specific consent to search for a handgun in a car, the police can jimmy or *Supp. 12 break the locks on a briefcase found in the trunk. Not so, if given permission to look for a standard-sized shotgun. Where given specific consent to search for several pieces of rock cocaine, the police could jimmy or break the lock on a small pill box. Not so, if given permission to look for a handgun.
Under the circumstances of this case, this rule meets the third Williams rule: “ ‘ “the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness.” ’ ” (People v. Williams, supra, 45 Cal.3d at p.1301.)
Even a warrantless search upon probable cause allows an officer to enter “a container in which the object of the search is most likely to be found.” (U.S. v. Ross, supra, 456 U.S. 798, 821 [72 L.Ed.2d 572, 591].) Neither does the lock-picking or breaking offend constitutional standards of reasonableness. In Carroll v. United States (1925) 267 U.S. 132, 151 [69 L.Ed.543, 45 S.Ct. 280, 39 A.L.R. 790] (cited with approval in California v. Acevedo, supra, 500 U.S._[114 L.Ed.2d 619, 627]), the police intrusion into the defendant’s property involved cutting into an automobile’s upholstery in search for contraband whiskey. If the search proves illegal and causes unwarranted damage to a suspect’s property, the owner of the property has a remedy for property damage against the authorities. (Gov. Code § 800 et seq).
The rule is based on familiar concepts of waiver and consent as to property and on judicial review of lower court fact findings, as set forth above.
Because I find sufficient evidence to allow the magistrate to find that the defendant gave her consent to search her residence for a gun, and that given what the officer was looking for and what he knew at the time of the search, it was reasonable to look inside the locked closet for a gun, I would affirm the denial of the motion to suppress.

Even though the Supreme court has instructed us that for purposes of evidence suppression motions, whether the search is conducted in reliance on a warrant or on the suspect’s consent makes no difference, critics of Sergeant Haggett may ask: “Why did he not get a warrant?”
The simple answer is because defendant Cooney removed that requirement through her consent to the search.
Admittedly, Cooney was faced with a Hobson’s choice. Deny consent, and cause Haggett to get a warrant, or grant consent, and hope for the best—such as a “misunderstanding,” raised as a defense, as to the permissible scope of the search.
But I hope that no one suggests that her constitutional rights were violated by giving her that choice.
Had she denied consent, had Haggett got a warrant to search the premises at 1051 Fitzgerald for a gun, and had the same daughter pointed to the same closet as the gun’s location, would any court determine that the search was not within the scope of the warrant because the closet was locked? Would any court determine that it was constitutionally “unreasonable” for Haggett to enter the locked closet?
*Supp. 9 What the majority do today is to give an incentive to suspects to grant consents to searches in the hopes that any evidence so found may be suppressed because the words used in the consent will not have the same effect as if those words were used in a warrant.
If we are to devalue consensual searches compared to warrant searches because of some unarticulated suspicion of the validity of the consent actually given, let us do so forthrightly by treating consensual searches as subject to different rules of interpretation. Perhaps these consents should be treated as contracts of adhesion, similar to insurance contracts, and to be strictly interpreted against the police who procure them. If we were to so base our decision and opinion, at least we would produce a record which would allow a higher court to correct us.